**In re ALBERT.**

**No. 36254.**

District Court, E. D. New York.

Jan. 27, 1942.

See, also, D.C., 40 F.Supp. 980.

Michael Friedman, of Brooklyn, N. Y., for Bankrupt, for the motion.

Meyer Kraushaar, of New York City, for Brooklyn Nat. Bank, objecting creditor, opposed.

CAMPBELL, District Judge.

The Referee in Bankruptcy before whom the application of the bankrupt for a dis-

charge in bankruptcy was heard, rendered an opinion on November 25, 1940, and on the 31st day of December 1940, made an order granting the bankrupt a discharge.

The objecting creditor, feeling aggrieved thereat, on October 8, 1941, filed a petition for a review.

This is a motion, made on behalf of the bankrupt, for an order denying the petition for review of the Brooklyn National Bank, and confirming the said order of the Referee granting the bankrupt's discharge, etc.

The objecting creditor filed thirteen Specifications of Objection to the discharge of the bankrupt, in its amended Specifications, which in substance allege as follows:

First. That the bankrupt failed to explain satisfactorily the deficiency in assets with respect to a store conducted by the bankrupt at 788 Bergenline Avenue, Union City, New Jersey.

Second. That the bankrupt failed to explain satisfactorily the deficiency in assets with respect to a store conducted by the bankrupt at 440 Northampton Street, Easton, Pa.

Third. That the bankrupt failed to explain satisfactorily the deficiency in assets with respect to a store at 281 Jackson Avenue, Jersey City, N. J.

Fourth. A concealment on the part of the bankrupt of an interest in the capital stock of the Jay Outfitters, Inc., and Jay Wholesale Co., Inc.

Fifth. The making of a false oath by the bankrupt to his schedules in his failure to disclose such interest in Jay Outfitters, Inc., and Jay Wholesale Co., Inc.

Sixth. The giving of false testimony on the part of the bankrupt with respect to the ownership of the store on Third Avenue near 152nd Street, Bronx, New York.

Seventh. The making of a false oath by the bankrupt before the Referee in connection with the business conducted by the bankrupt's wife.

Eighth. The making of a false oath by the bankrupt on April 20, 1939, when he testified that he did not have a brokerage account since 1929, whereas, in truth and fact, he had a brokerage account with the firm of Cohen, Wachsman & Wassall, and a personal account with the Corn Exchange Bank, Pennsylvania Branch, and used the stock purchased through said brokers to collateralize a loan which he personally made.

Ninth. The making of a false oath before the Referee when he testified that he never bought and sold merchandise himself, did not manage the salesmen at Jay Wholesale Co., Inc., gave no orders, and was not regarded as the proprietor by others.

Tenth. Failure of the bankrupt to keep books and records with respect to the business at 788 Bergenline Avenue, Union City, New Jersey, at 281 Jackson Avenue, Jersey City, New Jersey and at Easton, Pennsylvania.

Eleventh. The destruction or falsification by the bankrupt of his records from which his financial condition and business transactions might be ascertained, in that he used and operated the corporations, towit, the Jays' Outfitters, Inc., Jay Wholesale Co., Inc. and Jay's Outfitters, Inc., and the trade name of Jay's Wholesale Co. registered in the name of his wife, as a cloak to hide his interest in said business, and failed to keep and preserve books of account from which the business transactions conducted by him might be ascertained, and destroyed, mutilated and falsified such of the books as were kept.

Twelfth. That the bankrupt made a false oath to his schedules in bankruptcy by stating therein that he had no property in stocks, shares, bonds or annuities, whereas he did have an interest in the stock of Jay Wholesale Co., Inc., Jays' Outfitters, Inc., and Jay's Outfitters, Inc., which shares of stock were held in the name of the bankrupt's wife, and the names of other persons to objectant unknown, in secret trust for the benefit of the bankrupt, and by saying that he had no personal property, whereas he had an interest in said stock, and assets of Jay Wholesale Co., Inc., and by stating that he had no books, deeds, or papers, whereas he had various check books, and stub check books in connection with his business in the State of New Jersey, and Easton, Pennsylvania, which he wilfully failed, and refused to produce, and had other records in connection with said business, which he either failed to produce, or wilfully destroyed.

Thirteenth. That the bankrupt concealed his interest in a certain lease, made by the Gramercy Management Co., Inc., as landlord, and the bankrupt and one Harold Tanenbaum as tenants dated December 12,

1938, affecting premises 60-62 East 14th Street, Borough of Manhattan, City of New York, under which lease there was deposited as security the sum of $4,500.

Each of the Specifications numbered Fifth, Sixth, Seventh, Eighth, Ninth, Twelfth and Thirteenth alleged that the bankrupt committed an offense punishable by imprisonment as provided by the Bankruptcy Law in doing the acts charged.

The record made before the Referee was a large one, involving many transactions, and discloses the following:

In 1923 the bankrupt was in the ladies wholesale ready to wear business, but went out of that business in 1935 and was married to his present wife, Frieda Albert, formerly Frieda Madfes.

Samuel Madfes, the father-in-law of the bankrupt, made a gift of an apartment house with an equity of approximately $60,000 to his daughter at the time of the bankrupt's marriage to her, about 1926 or 1927. Thereafter the bankrupt's business consisted of taking charge of this property until it was lost by foreclosure.

Neither the bankrupt, nor his wife, had any funds of their own after the said apartment house was lost, and the bankrupt's father-in-law contributed largely to the support of the bankrupt, his wife and family.

Thereafter, in 1928, Samuel Madfes, the father-in-law of the bankrupt, expressed to the bankrupt a willingness to set him up in business, and the bankrupt, in seeking to acquire a business, saw an ad in a newspaper for the sale of a ginger ale bottling plant, in which business he induced his father-in-law, Samuel Madfes, to invest.

Samuel Madfes originally invested $10,000 under the arrangement that the bankrupt was to have a one-third interest in the business, from his share of the profits of which was to be paid his share in the original investment.

The business continued in existence for about six months during which time Samuel Madfes invested a total of $32,000.

The business was liquidated, the creditors paid off, and no profits were realized. A considerable part of the investment was lost, and the bankrupt remained indebted to said Samuel Madfes, his father-in-law, for one-third of the money he had put into the business, which represented the bankrupt's share.

The bankrupt did nothing thereafter for about a year, but obtained from Samuel Madfes, his father-in-law, support for himself, his wife and family.

Samuel Madfes, as a result of his experience with him, became convinced of the lack of business judgment of the bankrupt, but desired to help his daughter, and, an opportunity having presented itself to purchase the stock of a retail dress shop, Samuel Madfes expressed a desire to help his daughter by advancing moneys to buy the stock of the store, but refused to allow his son-in-law, the bankrupt, to exercise any dominion over this business.

Thereupon, Samuel Madfes gave to his daughter, the wife of the bankrupt, $6,000 which she used to purchase the retail store in question, and new stock.

On behalf of the objecting creditor the payment by Samuel Madfes to his daughter, the wife of the bankrupt, of the sum of approximately Six thousand dollars is sharply contested. Samuel Madfes testified that the said money was paid in part by cash, and in part by check, and while the checks produced and marked in evidence totalled only the sum of $2,060, I see no reason to doubt the testimony of said Samuel Madfes that he put up the $6,000, that he owned various large houses, and was in the habit of carrying around as much as $2,000 in cash in his pocket, nor do I see any reason to doubt his testimony that he helped his daughter out with additional sums of money whenever she came to him, both before and after the business was started.

The business was originally a corporation, under the name of Jay's Outfitters Co., Inc., and did business on Third Avenue, New York City, until it was liquidated in 1932. Frieda Albert, the wife of the bankrupt, with the proceeds of the liquidation of the original business, in her individual name as sole owner, opened another store under the name of Jay's Wholesale Co., and filed a certificate of doing business under that name in the County Clerk's Office.

A short time thereafter a corporation was organized and took over the business under the name of Jay's Wholesale Co., Inc. All the outstanding stock of which corporation was, as shown by the Stock Certificate Book, issued to Frieda Albert, and no transfer of said stock was made, as shown by the Stock Transfer Book, but

that the stock was still owned by the said Frieda Albert.

The bankrupt had no fixed duties with reference to that business and was not paid any salary, but the corporation paid his personal expenses. It is true that he assisted around the store, but a great deal of his time was spent in looking for another business for himself, having expressed himself as being dissatisfied with living off his wife.

The bankrupt testified that some time after Jay Wholesale Co., Inc., started functioning he was looking around for some venture of his own, and in so doing he met some one who had a retail store in Easton, Pa., and he expressed a willingness to sell his store, and fixtures, for the sum of $50 and suggested that the bankrupt take over the store. Thereupon, the bankrupt came to his wife, told her of this opportunity, and that it was a bargain.

The bankrupt further testified that under an arrangement made with his wife, the Jay Wholesale Co., Inc., advanced the $50 to purchase the store and fixtures, and sent merchandise to the Easton, Pa., store on consignment. He said that the arrangement on this business was that he, the bankrupt, should take the lease in his own name, open the bank account in the name of the corporation, and attempt to sell the merchandise sent by Jay Wholesale Co., Inc., on consignment, and to remit periodically for the merchandise on consignment, and retain one-third of the profits from the business, and that this was done. The Check Stub Book on that bank account was offered in evidence, but no cancelled vouchers were offered, nor were any other books offered. The check stubs so offered in evidence were for checks issued in the greater part to Jay Wholesale Co., Inc. This business lasted a very short time, and the testimony is that the business lasted a short time, and that there was never any profit from it, but that instead the business sustained loss. Sometime thereafter the bankrupt had the same arrangement with respect to the stores at Union City, New Jersey, and Jersey City, New Jersey.

The check stubs, but not the cancelled vouchers, were offered in evidence for the bank accounts for both of those stores, but no other books were offered for either of those stores.

It was further testified that Jay Wholesale Co., Inc., kept records of both of these stores, which included the merchandise sent on consignment, and records of the proceeds remitted.

It was further testified that the bookkeeper for the corporation made oral reports to the bankrupt whenever he requested them regarding the status of said business, but this related to the goods sold on consignment, and the amounts remitted therefor.

In the instant case the stenographer's minutes show that much testimony was taken, and the Referee rendered an opinion with which, in many respects, I am in accord.

I have carefully examined the evidence in view of the contentions advanced by the Attorney for the objecting creditor in his comprehensive brief.

Some testimony was received as to the lease from the Gramercy Management Co., Inc., to the bankrupt and another, but that lease was not taken until after the bankrupt had been adjudicated.

While as to some matters covered by the Specifications there may be suspicious circumstances, that is not sufficient to sustain them, and the Referee having seen and heard the witnesses, I should not disturb his findings, unless they be clearly wrong.

As to some other matters the record speaks for itself, and it is not a question of having seen and heard the witnesses.

As to the First, Second and Third Specifications. The bankrupt by his failure to keep proper books of account of the two stores in New Jersey, and the one in Pennsylvania, has made it impossible to make a full explanation, and the attempted one is not a satisfactory explanation, and those Specifications have been sustained.

As to the Fourth, Fifth, Sixth, Seventh and Eleventh Specifications relating to the alleged ownership of the bankrupt of, or of an interest in, Jay's Outfitters, Inc., Jay Wholesale Company, Inc., Jays' Outfitters, Inc., and the business conducted under the registered trade name Jay Wholesale Company at any time, I am convinced that these businesses were owned entirely by the bankrupt's wife, Frieda Albert, and that the bankrupt had no interest in any of them.

The money which was originally invested in the business was advanced by Samuel

Madfes, the father of Frieda Albert, the wife of the bankrupt, I can well believe that Samuel Madfes, a successful business man, after the display of lack of business judgment by the bankrupt, in one instance causing him a considerable loss, would insist on eliminating the bankrupt from the control of any of the money he advanced, or the business it might purchase.

Samuel Madfes naturally desired to assist his daughter, and I am convinced that he did assist her from time to time as she required assistance.

These Specifications were not sustained.

■ As to the Eighth Specification relating to the bankrupt's alleged false oath with respect to a brokerage account, and a personal account in the Corn Exchange Bank, while the testimony was that there was an isolated transaction with the brokerage firm, and a personal account for a very short time in the Corn Exchange Bank, these accounts did not belong to the bankrupt, because his wife turned over to him the money to open the brokerage account, and purchase one block of stock, upon which a loan was obtained from the bank. The proceeds of this loan was used by the corporation, therefore, the entire transaction was that of the corporation, and that the bankrupt's name was used for convenience only, and these were not transactions of the bankrupt.

That Specification was not sustained.

■ As to the Ninth Specification, relating to bankrupt's alleged false oath when he testified before the Referee that he never bought and sold merchandise himself, did not manage the salesmen at Jay Wholesale Company, gave no orders and was not regarded as the proprietor by others, was not supported by the evidence. Undoubtedly the bankrupt did seek to assist his wife when he was present, as he naturally would when supported by her, but he was not regularly employed, received no salary, and was absent seeking a business for himself much of the time.

That Specification was not sustained.

■ As to the Tenth Specification it is and was clearly established that the only books or records kept by the bankrupt were Check Stub Books, from which the only information that can be gained is as to the money deposited and disbursed.

There is no record of his indebtedness, and the record kept by Jay Wholesale Co., Inc., was only of the goods sent on consignment, and of the proceeds remitted. Much more is required than the unsupported statement of the bankrupt that there were no profits but on the contrary losses. Sustained.

■ As to the Twelfth Specification, relating to an alleged false oath on the part of the bankrupt in his schedules, in failing to disclose his interest in the Jay Wholesale Co., Inc., Jays' Outfitters, Inc., and Jay's Outfitters, Inc., which shares of stock were alleged to be held in the name of the bankrupt's wife, and the names of other persons to objectant unknown, and also his alleged failure to list his books or records in his schedules, it is sufficient to say that I have already found that the bankrupt did not own, or own any interest in any of the businesses mentioned in this Specification, and as to books and records he did not, with the exception of these Check Stub Books, have any, and I do not believe the omission was wilful. Not sustained.

■ As to the Thirteenth Specification, which alleges that the bankrupt concealed an interest in a certain lease, made by the Gramercy Management Co., Inc., as landlord, and the bankrupt and another as tenants, the testimony shows that while the lease was dated December 12, 1938, it was not made until after the adjudication in bankruptcy. Therefore, no such lease having been signed at or before the time of the preparation of the schedules in bankruptcy, the bankrupt did not conceal said lease, or make a false oath to his schedules.

The motion for an order denying the petition for review and confirming the order of the Referee granting the bankrupt's discharge is denied.

The petition to review is granted.

The First, Second, Third and Tenth Specifications are sustained.

The Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, Twelfth and Thirteenth Specifications are overruled.

The bankrupt is denied a discharge.