In re Irving YAWNICK, Debtor.

CENTRAL TRUST COMPANY, Plaintiff,

v.

Irving YAWNICK, Defendant.

Bankruptcy Nos. 81–21392, 81–2268A.

United States Bankruptcy Court,
W. D. New York.

April 2, 1982.

Woods, Oviatt, Gilman, Sturman & Clarke by Paul S. Groschadl, Rochester, N. Y., for plaintiff.

Kenneth B. Mason, Rochester, N. Y., for defendant.

## MEMORANDUM AND DECISION.

EDWARD D. HAYES, Bankruptcy Judge.

The debtor herein filed a voluntary Chapter 7 petition on September 1, 1981. The plaintiff herein has filed an objection to discharge under § 727(a)(5) in that the debtor has failed to explain satisfactorily loss of assets to meet the debtor's liabilities. A pretrial has been conducted and a trial had of the issues in the case.

At that trial and from stipulations submitted by the parties, it appears that the debtor herein was the owner and sole stockholder of a corporation known as Rochester Furniture Sales, Inc. hereinafter Rochester Furniture, which operated a retail store for the sale of furniture at 630 Ridge Road West in the City of Rochester and the State of New York. The plaintiff corporation hereinafter referred to as Central had made loans to Rochester Furniture which were guaranteed by the debtor, herein, Mr. Yawnick. Mr. Yawnick had given Central a collateral security mortgage upon his home in the Rochester area in the amount of $53,000.

During the course of Rochester Furniture's dealings with Central, the corporation on December 3, 1980, issued a financial statement and balance sheet which showed $22,789 in cash and $95,849 in inventory at cost as of September 30, 1980. The defendant testified during this procedure that his usual mark up was a 100% on the inventory of the business. In April of 1981, Central made demands on the debtor to provide additional information with regard to Rochester Furniture's financial position. In June of 1981, when no statements had been forthcoming, the store was visited by several of the officers of Central and it was during this visit that Mr. Yawnick indicated that he wished to hold a going-out-of-business sale. He informed Central at that point that he had approximately $170,000 in inventory which was owned by him and which should bring between $300,000 to $400,000 during the course of the sale. There were other assertions made by Mr. Yawnick, as president of Rochester Furniture. An agreement was entered into between Yawnick and Central in which the debtor would conduct a sale and open an account at Central to be held until the end of the sale, with the exception that the expenses of the sale when approved by Central would be paid by Rochester Furniture from the account.

The employees of Central periodically visited the premises of Rochester Furniture. Their testimony was that up until the visit of August 20, 1981, the furniture store appeared to be full of furniture. When the store was visited on August 20, 1981 by one of the officers of Central, the store was completely vacant. The debtor testified that he had a 10,000 square foot store. On August 5th, when the debtor appeared at Central to get approval of a couple of checks to pay expenses of the sale, the officer, who was in charge of the department, noted that there had only been $48,000 deposited with Central during the course of the sale and that $45,000 had been dispersed as expenses of the sale. He questioned Yawnick at that time and Yawnick indicated that there was over $100,000 in inventory which he owned upon the premises of Rochester Furniture and that by selling this inventory he would be able to pay off Central. He stated the reason the sales cost were such a high proportion of the amount deposited to date was that a lot of the expenses had been paid up front and, therefore, expenses would decline in the future.

On August 20th, when the employee or officer of Central went to the store, it was empty. Mr. Yawnick testified that he had a total of approximately $25,000 in inventory at the commencement of the sale and that he had brought in two truckloads of inventory on consignment. He said the sheriff had filed against the store where he had a lease and that he was forced to vacate. During the sale, he had sold the furniture owned by him and returned the furniture which was on consignment. When asked to explain the discrepancy between his assertions to Central as late as August 10, 1981 that he owned the furniture and that it had a value of over $100,000 at wholesale, he merely indicated that he had lied to Central. He filed his petition individually as a debtor on September 1, 1981 and in the petition, indicated that he owned no stock in any corporation.

The complaint of Central Trust alleges in that the debtor testified at the 341 hearing that he owned $67,000 in inventory. On his cross examination, he was asked if he testified truthfully at the meeting of creditors, held under § 341, and answered affirmatively. 11 U.S.C. § 727 reads in part as follows:

The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

The debtor, Mr. Yawnick, has defended on the grounds that Central Trust has failed to establish a prima facie case in its assertion of acts leading to the objection to discharge. The debtor states that no formal request by the bank was made at any

time prior to the commencement of the action to review the expenditures of the sale liquidating the corporation's inventory, nor was there any demand for an explanation of any deficiency of assets. The debtor also defends on the grounds that since the corporation and its assets were separate in form from Yawnick's ownership of the stock, he owes no explanation as to what happened to the corporate assets. Finally, he claims that he has provided a satisfactory explanation as to what happened to the inventory.

■ The issue in the instant case is whether the creditor, Central Trust Company, established reasonable grounds to believe that the debtor failed to explain the loss of his assets under 11 U.S.C. § 727(a)(5). That would constitute a prima facie case which would shift the burden of going forward to the debtor to make an explanation. The cases hold that the complaint of a debtor must not be a bare assertion of the statute, but must plead, with particularity, facts which would apprise the debtor of the charges against him. *In re Goldstein*, 20 F.Supp. 403, 404 (S.D.N.Y. 1937). In *In re Industrial Bank of Commerce v. Bissell*, 219 F.2d 624, 626 (2nd Cir. 1955), the court found that the creditor could use an inference that he had relied upon debtor's misstatements, rather than direct testimony in establishing reasonable grounds for believing such acts occurred. This established his prima facie case and the burden then shifted to the bankrupt to show facts which removed the case from the bar of the act. *In re Margolis*, 23 F.Supp. 735 (S.D.N.Y.1937), held that it was immaterial whether the objector makes the prima facie showing preceding or at the hearing on the specifications. Analogously, the time when the explanation might be made is within the discretion of the court and where a debtor fails to explain at the meeting of creditors, he may be permitted to rectify this by a satisfactory explanation at the hearing on the application for discharge. *In re Caplan*, 149 F.2d 731 (2nd Cir. 1945). Demand may be made for a satisfactory explanation at the first meeting of creditors, as was done in the instant case. See *Morris Plan Industrial Bank v. Schorn*, 135 F.2d 538, 540 (2nd Cir. 1943).

Here from April of 1981 up to the 341 hearing in October of 1981, Central sought to find out how much inventory Yawnick had in Rochester Furniture. By his own testimony, Yawnick lied to Central and he has yet to explain what did happen to the assets of his wholly owned corporation during the months immediately before his filing of a petition in bankruptcy.

Under the holding of *Bartle v. Markson Bros.*, 314 F.2d 303, 306 (2nd Cir. 1963), the sudden and unexplained *"riches-to-rags descent"* of the corporation in that case from its position as one of the financially strongest concerns in central New York to that of a bankrupt company amply made out the prima facie case required to shift the burden to explain the loss of $2 million in assets. The same principle applies in the instant case. In this case, the debtor failed to sustain his burden of coming forth with an explanation. He stated that losses occurred because he shipped goods on consignment back to their consignors after failing to sell them. Yawnick offered no proof beyond his own testimony of these consignments. He asserted his records of the consignments had been stolen but offered no police record of the alleged warehouse theft. His uncorroborated testimony lacked persuasiveness and constituted an unsatisfactory explanation. In *In re Albert*, 42 F.Supp. 825, 828 (E.D.N.Y.1942), where profits for goods sold on consignment were not recorded, the court rejected the bankrupt's unsupported statement that losses occurred.

Yawnick also defends on the grounds that the merchandise was the corporation's and not his own. He, however, does not deny that he was the sole owner of the corporation. He also does not deny that because of the reduced inventory, his stock in the corporation became valueless.

■ The trustee as representative of the estate would have had an opportunity to liquidate the corporation, if there were anything to liquidate. No question exists, here,

**4**

as to piercing the corporate veil. Mr. Yawnick, as sole stockholder, owes an explanation as to his management of the corporate assets since this effects the trustee's rights in the corporation and the value of his estate.

A prima facie case has been established by Central Trust. Yawnick failed to provide a satisfactory explanation to the loss of inventory prior to the liquidation sale, during the liquidation sale, at the 341 hearing, and at the discharge hearing. Therefore, Yawnick's discharge is denied and it is so ordered.