In re Richard G. MILLER, Debtor.

Ransom P. REYNOLDS, As Trustee in Bankruptcy for Richard G. Miller, Plaintiff

v.

Richard G. MILLER, Defendant.

Bankruptcy Nos. 84–20986, 86–2112A.

United States Bankruptcy Court, W.D. New York.

March 24, 1989.

Weeden A. Wetmore, Elmira, N.Y., for plaintiff.

Theodore W. Daunno, Upper Montclair, N.J., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This Adversary Proceeding was commenced by the Chapter 11 Trustee on October 14, 1986. The Trustee seeks to deny Richard G. Miller (the "Debtor") a bankruptcy discharge and have him found in contempt of Court. A three day bench trial yielded lengthy findings of fact, the most important of which follow.

On April 11, 1984, the Debtor filed a petition for Chapter 11 relief in the Bankruptcy Court for the District of New Jersey. On September 4, 1984, the case was transferred to this Court. On November 20, 1984, the Trustee, plaintiff here, was appointed. The Order appointing the Trustee directed that,

> The possession of the debtor of his property, business, and assets, be, and the same hereby is terminated as of this date. (Order Appointing Trustee, para. 1, November 20, 1984).

The Order further instructed the Debtor to, turnover and deliver to the trustee forthwith all property, funds and assets, books and records of said debtor and thereafter refrain and desist from interfering with trustee's handling and management of the same. (Order Appointing Trustee, para. 4, November 20, 1984).

For failing to abide the directives of the November 20th Order, the Trustee argues that the Debtor should be found in contempt of Court. For failing to abide the proscriptions of 11 U.S.C. § 727, the Trustee argues that the Debtor should be denied a discharge in bankruptcy. The Trustee pressed several theories at trial in support of the relief requested. In general, the Trustee attempted to prove that the Debtor concealed assets, transferred assets, concealed financial information and swore falsely under oath. Accordingly, the Trustee requests denial of discharge under 11 U.S.C. § 727(a)(2), (3), (4), (5) and (6).

The first broad category of transgression which the Debtor is accused of is the concealment of assets from the Trustee and

the Court. Among the assets concealed was a checking account in a New Jersey bank which the Debtor failed to list in his petition. Records subpoenaed by the Trustee indicate that the account had a balance of $1,410.88 shortly after the time of the bankruptcy filing. Evidence adduced at trial tended to show an active history of deposits and withdrawals from the account throughout the early stages of this proceeding. During the period shortly before and after the bankruptcy filing, six checks were drawn on the account in amounts ranging from $777.00 to $4,750.00. At least three of those checks were drawn for the purpose of purchasing stock. The stock purchases were without the knowledge or consent of the Court and the Trustee. Whether the stocks have been liquidated is unclear. The proceeds, if any, of liquidation were neither reported, nor turned over, to the Trustee.

Another bank account which aroused the suspicion of the Trustee and became the subject of proofs at trial was the debtor in possession account. The Debtor represented that on two post-petition occasions he had received large sums of money. These sums, aggregating $28,000.00, were supposedly deposited in the debtor in possession account. However, an inspection of the account records indicate that no such deposits were made. The sums involved represent proceeds from the sale of estate assets. The sale of these assets were without the knowledge or consent of the Court and the Trustee. The proceeds were never adequately accounted for.

A third bank account which was the subject of extensive questioning at trial was an account in the name of a corporation, Christman Tree Land of New Jersey. The Debtor strenuously resisted the Trustee's accusations that the account was a conduit through which proceeds from the sale of estate property were laundered and used to pay various personal obligations of the Debtor. These protestations are belied, however, by evidence which shows checks drawn on the account at the Debtor's direction to subsidize his appetite for speculation in stock, to defray legal expenses and to pay personal expenses which the Debtor had incurred through the use of credit cards which he concealed from the Court and the Trustee.

Also concealed from the Court and the Trustee were the Debtor's extensive real estate holdings. The most notorious of the properties was the parcel located at 2416 Red Bud Trail, Germantown, Tennessee. That property was sold shortly after the Debtor filed in bankruptcy. The sale was without the knowledge or consent of the Court and the Trustee.

The closing statement indicates that the sale of the Tennessee property netted proceeds of $32,095.66. The Debtor had at one time indicated that the Tennessee property was owned jointly by he and his wife, to whom one half the sale proceeds were paid. At trial, however, it came out that the Tennessee property was owned by the Debtor individually. Accordingly, the payment of sale proceeds to his wife appears preferential.

Additional real property holdings of the Debtor were discovered in the course of a comprehensive title search ordered by the Trustee. The search revealed no less than twenty parcels owned by the Debtor, or by various entities through which the Debtor conducted business. The Debtor's Schedule of real property holdings, however, listed no asset other than the Debtor's private residence.

The next class of wrongdoing with which the Debtor is charged involves the removal and transfer of assets from the bankruptcy estate. Among the Debtor's business endeavors was the growing of various species of evergreen for harvest and sale as Christmas trees. The testimony of a United States Department of Agriculture investigator shows that between 800 and 1,000 trees were harvested from land which was part of the bankruptcy estate. These trees were subsequently transported, through use by the Debtor of equipment which belonged to the estate, to various sites in New Jersey where they were sold. The removal and transportation of the trees was without the knowledge or consent of the Court or the Trustee. The proceeds of

sale were neither turned over to the Trustee nor adequately accounted for. While the Debtor asserted that the trees were harvested from property owned by the Debtor's wife, the evidence has convinced the Court otherwise. Perhaps, the Debtor was thinking about some other trees. Trees which, according to testimony elicited at trial, were harvested from estate property under the Debtor's direction and transplanted to property owned by his wife without the knowledge or consent of the Trustee.

The Debtor is next charged by the Trustee with failing to keep, preserve and produce financial records. This omission was evidenced by a failure or unwillingness to list the names of individuals whom the Debtor represented were indebted to him; a failure to produce records of investments with several New Jersey and California companies; a failure or unwillingness to produce information concerning several insurance policies; and a failure or unwillingness to produce financial records concerning a corporation, Atrax, of which the Debtor is principal.

The final thrust of the Trustee's proofs is that the Debtor lied inveterately in a number of matters concerning which he had sworn under oath. As discussed above, these matters chiefly relate to the existence of hidden bank accounts and real property holdings, the use and appropriation by the Debtor of estate assets, and the disposition for personal gain of proceeds realized from the sale of estate assets.

■ At the outset, the Court notes that because this case is pending under Chapter 11, section 727(a) of the Code may not be relied upon directly to sustain a denial of discharge. 11 U.S.C. § 103(b). Nevertheless, a Chapter 11 debtor may be denied discharge for any of the grounds listed under section 727(a) if a plan of reorganization is confirmed which provides for the liquidation of substantially all the estate property and the debtor desists from engaging in business after consummation of the plan. 11 U.S.C. § 1141(d)(3). The Court has held decision on the matter of the Debtor's discharge in abeyance pending submission by the Trustee of a reorganization plan. *See In re Miller,* 80 B.R. 270 (Bkrtcy.W.D.N.Y.1987). A plan has now been submitted which provides for liquidation of substantially all the estate assets and discontinuance by the Debtor of his prepetition business endeavors. Accordingly, the Trustee's complaint will be treated as stating causes of action pursuant to 11 U.S.C. § 727(a), albeit derivatively through 11 U.S.C. § 1141(d)(3)(C).

■ The Trustee first theorizes that the Debtor defrauded creditors by concealing or removing property of the estate after the date on which the case was commenced. Accordingly, denial of discharge is sought pursuant to 11 U.S.C. § 727(a)(2)(B).

Whether the Debtor had the necessary wrongful intent to sustain a denial of discharge is a question of fact. *Matter of Reed,* 700 F.2d 986, 991 (5th Cir.1983). To deny a discharge under 11 U.S.C. § 727(a)(2), the Court must find that property was concealed or removed with *actual* intent to defraud creditors. *In re Adlman,* 541 F.2d 999, 1003 (2nd Cir.1976) (discussing the predecessor statute to 11 U.S.C. § 727(a)(2)). However, because fraudulent intent is rarely susceptible to direct proof, *In re Saphire,* 139 F.2d 34, 35 (2nd Cir. 1943), such intent will be inferred where proven by a preponderance of circumstantial evidence. *In re Rubin,* 12 B.R. 436, 441 (Bkrtcy.S.D.N.Y.1981); *In re Gordley,* 38 B.R. 630, 632 (Bkrtcy.S.D.Ohio 1984); *In re Shumate,* 55 B.R. 489, 494 (Bkrtcy.W.D. Va.1985). When evidence is proffered establishing reasonable grounds from which to infer actual intent to defraud, the burden of going forward with proofs to the contrary falls upon the debtor. *In re Freudmann,* 495 F.2d 816, 817 (2nd Cir.1974), *aff'g In re Freudmann,* 362 F.Supp. 429 (S.D.N.Y.1973). Bare denials do not suffice to carry the burden and refute the inference of fraudulent intent. *Id.* Further, the Trustee need not be shown to have ultimately suffered by the Debtor's acts to sustain a bar to discharge. *In re Feynman,* 77 F.2d 320, 322 (2nd Cir.1935).

The phrase "badges of fraud" was coined to describe the indicia of fraud from which

actual fraudulent intent can be inferred. *Freudmann, supra.* Among the badges is the retention and concealment by a debtor of property rightfully belonging to the bankruptcy estate. *In re May,* 12 B.R. 618, 627 (Bkrtcy.N.D.Fla.1980). "Concealment is not confined to physical secretion.... It covers other conduct, such as placing assets beyond the reach of creditors or withholding knowledge thereof by failure or refusal to divulge owed information." 4 Collier on Bankruptcy ¶ 727.02[6][b] (15th ed. 1986). Thus, a debtor's concealment of assets and interests by failing to list them in his bankruptcy petition or disclose them under subsequent examination has been held tantamount to fraud. *In re Diorio,* 407 F.2d 1330, 1331 (2nd Cir.1969).

In this case, the Debtor retained for his use and benefit a checking account and several charge accounts, a plethora of real property holdings, indeterminable cash proceeds from the sale of estate property and cash receipts from business ventures with respect to which the Trustee had ascended as party in interest. To compound his wrong, the Debtor concealed the existence of these assets and interests from the Court and the Trustee. As the Second Circuit remarked,

> Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth, which is the kindest attitude that can be taken toward [the Debtor] is the equivalent of fraud.

*In re Diorio,* 407 F.2d at 1331.

Here, as in *Diorio,* circumstantial evidence abounds from which an inference of actual intent to defraud creditors may fairly be drawn. The Debtor's bald assertions that his conduct was a misguided attempt to make a living and pay bills does not refute the inference. Accordingly, the Trustee's request for relief pursuant to 11 U.S.C. § 727(a)(2)(B) is granted.

The Trustee next asserts that grounds for denial of discharge exist under 11 U.S. C. § 727(a)(3) because the Debtor failed to keep records from which his financial status and business dealings may be ascertained. *In re Underhill,* 82 F.2d 258 (2nd Cir.1936), a case decided by the Second Circuit under the Bankruptcy Act, established a standard for record keeping which still applies.

> Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books. (citations omitted). The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to the failure to which the act applies. (citation omitted). While it is always open to the bankrupt to affirmatively justify his failure to keep records, each case must stand upon its own facts with the inquiry always as to whether the bankrupt has sustained this burden of justification which the statute places upon him for his failure to keep adequate records. Where the bankrupt was involved in many transactions of an extensive character, a substantially accurate and complete record of his affairs is a prerequisite to his discharge.

*Underhill,* 82 F.2d at 259–60.

In this case, the record reveals the Debtor's penchant for speculation in stocks. Expensive investments were made by the Debtor using funds from a checking account which he hid from the Court and the Trustee.[1] Respecting each of these investments, the Debtor claims to have suffered

---

1. Investment of $2,000.00 paid to a Ms. Sonja Mattern "for stock" on 9/8/84; Investment of $1,000.00 in Upster Corp. on 10/4/84; Investment of $4,750.00 in Wells Benrus Stock on 10/17/84; Investment of $13,500.00 with International Trading Group on 2/28/85; Investment of $7,500.00 with the Brazier Corporation in late 1983 or early 1984.

a total loss. However, no documentation has been offered to support the assertion. The Debtor has also failed to produce information concerning life insurance policies and a New Jersey corporation with which he has been closely connected. He claims that the policies have not been kept up and that the corporation is defunct, but has failed to produce evidence of these contentions. Finally, he has failed to supply the Trustee with information regarding a sizable obligation owed him in Texas.

By proving the existence of the Debtor's investment activities and business interests, the Trustee shifted the burden of providing explanatory documentation to the Debtor. *In re Massa,* 133 F.2d 191 (2nd Cir.1943). The Debtor's complete failure to provide documentation, or adequately explain its absence, is not justified under the circumstances of this case. Accordingly, the Trustee's request for relief pursuant to 11 U.S.C. § 727(a)(3) is granted.

The Trustee next argues that the Debtor should be denied a discharge for having made false oaths. 11 U.S.C. § 727(a)(4)(A). It is by now clear that the Debtor shrank from honesty throughout this proceeding. The failure to reveal the existence of extensive real property holdings and an active checking account are but two examples of his deceptions. The deceits being patent, all that need be proven by the Trustee to sustain a denial of discharge is that the Debtor's deceptions were practiced purposefully and with intent to defraud creditors. *Tancer v. Wales,* 156 F.2d 627, 628 (2nd Cir.1946).

Being in respects similar to the concealment of assets, the making of false oaths with intent to defraud creditors may be proved by inference from the facts. 4 Collier on Bankruptcy ¶ 727.04[1] (15th ed. 1986). Accordingly, "[a] reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *In re Mazzola,* 2 C.B.C.2d 242, 4 B.R. 179 (Bkrtcy.D.Mass. 1980), *citing In re Diorio,* 407 F.2d 1330 (2nd Cir.1969).

Here, the Debtor's dishonesty in falsely executing his petition and swearing falsely under oath was calculated to divert attention from valuable assets. These clandestine assets he made use of during the pendency of this proceeding for profit and enjoyment. From the latter conduct, it is reasonable to infer that the Debtor perceived a benefit to be derived from his deceits. Accordingly, the Court concludes that the false oaths were made by the Debtor knowingly and with intent to defraud creditors. The Trustee's request for relief pursuant to 11 U.S.C. § 727(a)(4)(A) is granted.

The Trustee next argues that discharge should be denied for the Debtor's failure to satisfactorily explain the loss of assets. 11 U.S.C. § 727(a)(5). Under this subsection, the burden of going forward with evidence of an unexplained loss is upon the objectant. If the burden is sustained, the debtor must satisfactorily explain the loss. *Federal Provision Co. v. Ershowsky,* 94 F.2d 574, 575 (2nd Cir.1938). Here, the Trustee has met the burden of going forward by showing that the Debtor utilized estate assets to subsidize his professed interest in stock speculation. The Debtor, however, has not satisfactorily explained how, when or why these investments were lost.

In order to satisfactorily explain the loss of assets, the Debtor need demonstrate good faith and integrity, as by cooperating with the Court and creditors. Such cooperation would have been manifest in the provision of documentation by the Debtor to substantiate the losses purportedly suffered on high risk investments. Despite repeated entreaties, however, the Debtor failed to provide even a modicum of documentary evidence. Instead, he testified resolutely that each and every of his investments went bust. Testimony so cursory is insufficient and unpersuasive. More is required. *In re Yawnick,* 19 B.R. 1, 3 (Bkrtcy.W.D.N.Y.1982). No more was offered. Accordingly, the Debtor failed to satisfactorily explain the loss of assets, and the Trustee's request for relief pursuant to 11 U.S.C. § 727(a)(5) is granted.

The Trustee next argues that discharge should be denied for the Debtor's refusal to obey Orders of this Court. 11 U.S.C. § 727(a)(6). Under the subsection, "[a] debtor will be denied a discharge if he has refused in the case to obey any lawful order of the Court." 4 Collier on Bankruptcy ¶ 727.09[2] (15th ed. 1986). To warrant denial, the objectant must show that there has been an instance of the wrongful conduct charged. The burden then shifts to the debtor to go forward with proofs refuting or justifying the objectionable act. *Connelly v. Michael,* 424 F.2d 387, 389 (5th Cir.1970). In deciding whether acts technically falling within the proscription of the statute should result in an Order of denial, bankruptcy courts of this Circuit have been instructed to "weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied." *In re Kokoszka,* 479 F.2d 990, 997–98 (2nd Cir.1973).

In this case, the Debtor was ordered on November 16, 1984, to relinquish possession and control of his property and business to the Trustee. The evidence indicates that he failed to do so, instead retaining control of assets whose existence he secreted for his own benefit, use and enjoyment. Other examples of the Debtor's recalcitrance throughout this proceeding have been cited and will briefly be repeated.

The Debtor failed to obey an Order from the bench directing that he reveal the identity of individuals who he claimed were indebted to him. The Debtor failed to obey an Order directing that he provide information regarding investments he had made during the pendency of the proceeding. Further, the Debtor failed to provide information regarding life insurance policies in which he was alleged to have held interests. Finally, the Debtor failed to obey an Order directing that he provide information regarding a corporation, Atrax, of which he was principal. Alone, any of these omissions may not have been so egregious as to warrant a denial. In the aggregate, this persistent fractiousness suffices to justify imposition of the sanction. Accordingly, the Trustee's request for relief pursuant to 11 U.S.C. § 727(a)(6) is granted.

The Trustee also seeks damages and other relief upon a finding that the Debtor acted in contempt of this Court's Orders. While the Bankruptcy Court is empowered to make contempt findings and impose sanctions, *Haile v. New York State Higher Education Services Corp.,* 90 B.R. 51 (W.D.N.Y.1988), the request for contempt sanctions in this case is procedurally infirm. Bankruptcy Rule 9020 prescribes the steps which must be taken preliminary to a finding of contempt. Here, the strictures of the Rule have not been complied with. Accordingly, a determination on the issue of contempt is not possible at this time. The Trustee is granted leave to renew the contempt application in conformity with the provisions of Rule 9020.

To summarize, this is a case where the Debtor's outgo exceeded his income so that his upkeep became his downfall. The Trustee's request for relief pursuant to 11 U.S.C. 727(a) is in all respects granted. The request for contempt sanctions is denied, and it is so ordered.