In re Dominic J. MORANDO, Debtor.

**AMERICAN MOTORS LEASING CORPORATION, Plaintiff,**

v.

**Dominic J. MORANDO, Defendant.**

**Bankruptcy No. 88–11021–HAL.**
**Adv. No. 89–1172.**

United States Bankruptcy Court,
D. Massachusetts.

March 16, 1990.

Robert Eberle, Tighe, Curhan, Burwick & Piliero, Boston, Mass., for plaintiff.

Richard Blumenthal, Silverman & Kudisch, Boston, Mass., for defendant/debtor.

## FINDINGS & RULINGS ON DISCHARGE

HAROLD LAVIEN, Bankruptcy Judge.

The plaintiff timely filed a complaint and subsequently a series of amended complaints, objecting to discharge under 11 U.S.C. § 727, seeking avoidance of a transfer of an interest in property under 11 U.S.C. § 544(a)(1), and seeking exception to discharge of debtor's debt to the plaintiff under 11 U.S.C. § 523.

This Court ordered a bifurcated trial on each separate Count and directed plaintiff's denial of discharge claims under § 727 be heard first. The trial commenced on Sep-

tember 28, 1989 and continued for a second day of hearing on October 3, 1989. The debtor was allowed to offer additional evidence at a hearing on February 23, 1990.

The determinative issue was 11 U.S.C. § 727(a)(3). Did the defendant fail to keep and preserve books and records and papers from which his financial condition and business transactions may be ascertained, and if so, was the failure justified under all of the circumstances of the case?

The schedules of the debtor reveal assets of $526,000 and liabilities of $4,900,460.

■ As a preliminary matter, the debtor challenged the status of American Motors Leasing Corporation as a creditor and requested any determination await a determination of that matter pending in the United States District Court. The debtor attempted to resolve this matter by means of motion for summary judgment, which was denied. The debtor misconstrues both the scope of the definition of a creditor under 11 U.S.C. § 101(9) and claim under 11 U.S.C. § 101(4) which include holders of disputed claims, and the focus of § 727 which is unlike a dischargeability § 523 complaint. A discharge dispute affects all creditors and is not a private dispute but one that brings into question the very integrity of the bankruptcy process. *In re Hunn,* 49 B.R. 430 (M.D.Fla.1985).

■ The debtor also raises the question of the appropriate burden of proof. There is a split of authority as to whether a preponderance of the evidence is sufficient or clear and convincing evidence is required. The First Circuit has determined that a preponderance is sufficient *In re Mascolo,* 505 F.2d 274 (1st Cir.1974), however, the evidence presented by American Motors meets the clear and convincing test. The ultimate burden of proof rests on American Motors. Bankruptcy Rule 4005. The Court, in weighing the evidence, is cognizant of the importance of the fresh start doctrine and should construe a complaint objecting to discharge strictly against the objector and liberally in favor of the bankrupt. *In re Tabibian,* 289 F.2d 793, 795 (2nd Cir.1961). However, the Court must also be cognizant that a dis-charge in bankruptcy is a privilege and not a matter of right, *U.S. v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).

■ A "substantially accurate and complete" record of the financial affairs of a debtor is a prerequisite to his discharge in bankruptcy, unless there is justification for the lack of records, *In re Miller,* 97 B.R. 760, 763 (Bkrtcy.E.D.N.Y.1989) (quoting *In re Underhill,* 82 F.2d 258, 259–60 (2d Cir. 1936)).

While the courts have reasonably broad discretion in determining whether the produced records meet the requirements of 11 U.S.C. § 727(a)(3), *see In re Shapiro,* 59 B.R. 844, 848 (Bkrtcy.E.D.N.Y.1986), it is abundantly clear that mere business account records, such as check stubs, cancelled checks, and bank statements, are inadequate to document complex business transactions involving large amounts of money. *Id.* at 850; *In re Frank,* 14 B.R. 166, 168 (Bkrtcy.D.Fla.1981); *In re Goblick,* 93 B.R. 771, 775 (Bkrtcy.M.D.Fla. 1988). The court in *Frank* explained that in the absence of complete transaction records, "the existence of the primary documents are worthless to the trustee or the creditors, because the time and expense necessary to reconstruct and present the transactions in an intelligible and usable form would clearly be prohibitive." *In re Frank,* 14 B.R., at 168. Applying similar reasoning, the court in *Shapiro* noted that checking account records could not distinguish between personal expenses and business expenses that were paid out of the same accounts, and under these circumstances, the records were inadequate under 11 U.S.C. § 727(a)(3). *In re Shapiro,* 59 B.R., at 850.

■ Once a party challenging the adequacy of debtor's records has met an initial burden of proof of establishing that the records are inadequate to determine the financial affairs and/or business transactions of a debtor, the burden shifts to the debtor to justify the absence of complete records. *Goblick,* 93 B.R., at 775. Where the nature of debtor's business operations indicates that others in like circumstances

would ordinarily keep financial records, the debtor cannot justify his failure to maintain records merely by stating that he did not comprehend the need for them, *In re Delancy*, 58 B.R., at 768 (quoting *In re Sandow*, 151 F.2d 807, 809 (2d Cir.1945)), or that it was not his practice to keep business records, *In re Shapiro*, 59 B.R., at 850. Any attempt to justify the failure to keep records must show that the circumstances were in fact so unusual that ordinary record keeping was not required. *In re Delancy*, 58 B.R., at 768. Debtor has made no such showing of fact.

■ Intent by debtor to conceal financial information from creditors is not required under Section 727(a)(3) to deny discharge. *In re Miller*, 97 B.R. 760, 763 (Bkrtcy.W.D. N.Y.1989) (quoting *In re Underhill*, 82 F.2d at 259); *In re Delancy*, 58 B.R. 762, 768 (Bkrtcy.S.D.N.Y.1986) (citing cases).

■ While trustees and creditors would find it highly desirable if every bankrupt kept a formal set of books, the requirement of 11 U.S.C. § 727(a)(3) is considerably more liberal. Nonetheless, however informal the record keeping, the financial history of a debtor must be preserved in enough of a paper trail so that those concerned with the proper administration of a debtor's estate need not be experienced explorers of a rat's nest of scraps of uncoordinated bits and pieces like parts of some impressionistic puzzle that needs to be solved in order to decipher the financial machinations of the debtor. After intensive discovery attempts, two days of trial, and an additional opportunity to offer new material, it is still not possible to trace the debtor's extensive manipulations of assets. The fact that the debtor's accountant can now file the 1987 and 1988 tax returns is really irrelevant. For tax returns, the taxpayer provides information from which and in reliance on the same a return is prepared. Tax returns, whether filed timely or belatedly, do not require a full scale audit or even an investigation of the taxpayer's affairs.

The type of records produced checks made payable to the debtor which are offered without the stubs or other notations.

Also submitted were corporate records of corporations in which the debtor held a substantial interest such as *It's As Simple As That Stable*, but these corporate records do not correspond to the date or amount of the checks and, therefore, fail to support explanations of use of debtor's funds.

The debtor owns race horses and belatedly produces 1044's showing their winnings at out-of-state race tracks which he says he overlooked earlier because out-of-state racing was minimal, but there are no similar records of in-state racing, which was presumably their major activity.

The debtor and his wife purchased 239 Lynnfells Parkway, Saugus, Massachusetts as their residence in 1982. The property had a mortgage of $100,000 and a fair market value in excess of $300,000 when, in February 1987, it was transferred to the Morando Family Trust for a stated consideration of $1.00. The debtor's five children are the beneficiaries and debtor contends they paid him for it. This is a statement not agreed to by all of the children. The debtor has continuously made the home his residence. It is not the residence of the five children. The debtor pays no rent but stated that he paid expenses which he recorded in a notebook. When the Court asked him to produce the notebook, he ultimately produced something he prepared a few days before, not a contemporaneous record, but a recapitulation. The creditor insists the home is the debtor's, but even accepting the debtor's contention, there is no complete financial record showing how the whole, approximately, $250,000 was paid for and by whom, or what happened to the proceeds. *In re Martin*, 698 F.2d 883 (7th Cir.1983).

The 40 Lee Burbank Trust, again with the children as beneficiaries, presents a similar scenario. The debtor paid a $25,000 deposit and signed the purchase and sale agreement. There is no record showing the alleged payment by the children.

Northeast Air Park, Inc. is a Massachusetts corporation incorporated in September 1985, renting parking spaces for users of Logan Airport. The debtor was its sole

officer and manager in control of its bank account, and the original incorporator and stockholder. His estranged wife and daughter received $500 a week each from him while residing in Florida and, admittedly, rendering no services. There are no stock certificates showing transfer to the children who took no part in the business management and, again, if we accept the debtor's contention that he retained no interest, there are no financial records detailing this change of ownership.

The debtor, in April of 1985, had $210,000 in savings and certificate of deposits which he accounts for as loans to some of his entities but has no paper record of any loan other than the less than directly correlated records of those separate entities.

He admits to the sale of a coin collection for $35,000 to an individual, allegedly now deceased, but has no documentation. One might be excused for not keeping records of the sale of insignificant or even small items, but this collection valued at $55,000 requires some record of the sale and disposition of the proceeds.

It would only prolong this memorandum to detail the other entities in which this debtor played a major role and while some of them, such as Best Auto Rental, have substantial records, others, such as those mentioned, and Ardom Detective Agency, Inc. and its successor or subsidiary Security Services of Malden appear, at best, to have stubless checks. Whatever the state of their records, they are separate entities and are not the debtor's records. *In Matter of Horton*, 621 F.2d 968, 6 B.C.D. 823 (9th Cir.1980).

The debtor has been shown by clear and convincing evidence to have failed to keep adequate records to allow a trustee or creditors, with reasonable effort, to recreate his extensive financial history. His lack of formal education does not provide a justification for this was no small Mom and Pop operator.

Discharge is denied.