In re Anne FROMMANN, a/k/a Ortrud Kapraki, a/k/a Ortrud Frommann, Debtor.

Paul I. KROHN, as Trustee in Bankruptcy of Anne Frommann, Plaintiff,

v.

Anne FROMMANN, a/k/a Ortrud Kapraki, a/k/a Ortrud Frommann, Defendant.

Bankruptcy No. 190–11854–260.
Adv. No. 191–1055–260.

United States Bankruptcy Court, E.D. New York.

April 12, 1993.

Peter E. Tammaso, Kew Gardens, NY, for debtor.

Paul I. Krohn, Brooklyn, NY, Trustee in Bankruptcy.

## DECISION ON MOTION OF THE TRUSTEE FOR AN ORDER DENYING DISCHARGE TO THE DEBTOR

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which Paul I. Krohn, Esq., as the Chapter 7 trustee (the "Trustee") of the Debtor, Anne

Frommann, ("Frommann" or the "Debtor"), is the Plaintiff, wherein he seeks to have the Debtor's discharge denied pursuant to 11 U.S.C. § 727(a)(3) on the grounds that she failed to keep and preserve books and records and 11 U.S.C. § 727(a)(4) on the grounds that she made a false oath. For the reasons stated below, the Debtor's discharge is hereby denied pursuant to § 727(a)(3).

## FACTS

On May 11, 1990, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Following the filing of the petition, the Trustee examined her during various § 341 meetings.[1] In purporting to comply with the request of the Trustee for the Debtor's records, she provided him with a morass of records consisting of bills, checks, bank statements and closing statements. However, no books of account were furnished to the Trustee. In addition, the Debtor supplied accounting information pertaining to her real estate operations to verify that all closings of sales and real property were properly accounted for and recorded, including worksheets summarizing her real estate closings for the year 1988. Pursuant to the worksheets, the Debtor closed on sales of 14 real properties owned by Glender Enterprises, Ltd. ("Glender"), a subchapter S corporation, of which she is the president and sole shareholder, and received a gross profit in the amount of $190,673 for these properties. The worksheets set forth the following:

| | | |
|---|---|---|
| Sales | $1,710,851 | |
| Less: Fees | 145,945 | |
| Net Sales | | $1,564,906 |
| Purchases | | 1,374,233 |
| Gross Profit | | $ 190,673 |

In order to verify the information contained in the worksheets, the Trustee examined Glender's 1988 corporate income tax return which was prepared by the Debtor's accountant and signed by the Debtor on June 20, 1990, subsequent to the filing of her petition in bankruptcy on May 11, 1990. The corporate tax return for that year reflected the real estate transactions and set forth a gross profit of $302,673 as follows:

| | |
|---|---|
| Sales | $2,619,851 |
| Costs of Goods Sold | 2,317,178 |
| Gross Profit | $ 302,673 |

The Debtor's accountant explained, and the Debtor did not dispute, that the discrepancy between the accounting worksheets that had been submitted to the Trustee and the corporation's tax return, was that the profit reported on the corporation income tax return was false.

Based upon the admittedly false income tax return and the Debtor's worksheets, on February 7, 1991, the Trustee commenced the present action pursuant to the aforementioned sections of the Bankruptcy Code objecting to the discharge of the Debtor. The Trustee argues that the Debtor should be denied her discharge since she failed to keep adequate records from which the Debtor's financial condition or business transactions could be ascertained and that she knowingly and fraudulently made a false oath or account in connection with the case.

During a hearing before this Court, on June 18, 1992, the Trustee called Ken Weitz ("Weitz"), the Debtor's accountant, as a witness. Weitz, who is not a certified public accountant, has been the Debtor's accountant for seven years and has prepared her books, records and tax returns for such time. The Trustee examined Weitz with respect to the 1988 federal income tax return of Glender. Weitz testi-

---

**1.** Pursuant to § 341 of the Bankruptcy Code, the trustee must convene and preside over a meeting of the debtor's creditors. Such meeting shall include the examination of the debtor under oath. Fed.R.Bankr.P. 2003(b).

fied that he could not explain the $112,000 discrepancy between Glender's federal income tax return, which set forth a gross profit of $302,673, and the summary worksheets submitted by the Debtor, setting forth a gross profit of $190,673 for the same year, other than that the Debtor wished to reflect a profit.

In addition, Glender's 1988 corporate income tax return stated gross receipts to be $2,619,851 while the summary worksheets showed gross sales of only $1,710,851, a discrepancy of $909,000. Weitz testified that the discrepancy was purposely made so that Glender would not show a net loss, but instead, would show a profit. By creating these fictional gross sales and profits, the Trustee asserts, the Debtor was able to hide a loss and cover substantial alleged expenses.

## DISCUSSION

■ This Court has previously held that the relief afforded in bankruptcy cases was intended to permit an honest debtor to obtain a fresh start from debt. The "central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt....'" *In re Sawyer*, 130 B.R. 384, 392 (Bankr.E.D.N.Y.1991) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Such relief, however, is a privilege, not a right, and should only inure to the benefit of the "honest but unfortunate debtor." *Id.; In re Pimpinella*, 133 B.R. 694, 697 (Bankr. E.D.N.Y.1991). Therefore, objections to discharge must be construed strictly against the objectant and liberally in favor of the debtor. *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976); *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir.1973), *aff'd, Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), *reh'g denied,*

419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992); *In re Sapru*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991); *In re Overmyer*, 121 B.R. 272, 279 (Bankr. S.D.N.Y.1990). Section 727(a) of the Bankruptcy Code, however, provides various grounds for denying the discharge of an abusive or unworthy debtor. *Pimpinella*, 133 B.R. at 697; *In re Shapiro*, 59 B.R. 844, 847 (Bankr.E.D.N.Y.1986).

■ Section 727(a)(3) exempts from discharge any debtor who has

> failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to effectively enable them "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *In re Goldstein*, 123 B.R. 514, 522 (Bankr.E.D.Pa.1991). *See In re Cox*, 904 F.2d 1399, 1402 (9th Cir.1990); *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979); *In re Martin*, 141 B.R. 986, 995 (Bankr.N.D.Ill.1992); *In re Rusnak*, 110 B.R. 771, 776 (Bankr.W.D.Pa.1990). Additionally, an intent to conceal one's financial condition is no longer a prerequisite to support an objection to discharge pursuant to § 727(a)(3). *In re Underhill*, 82 F.2d 258, 259 (2d Cir.1936), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); *In re Miller*, 97 B.R. 760, 763 (Bankr.W.D.N.Y. 1989); *Shapiro*, 59 B.R. at 848.

In *In re Underhill*, the Second Circuit set forth the standard by which the sufficiency of such records should be determined:

> The law is not unqualified in imposing a requirement to keep books or records,

and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

82 F.2d at 259–260. *See Pimpinella*, 133 B.R. at 697; *Office of the Comptroller Gen. of the Republic of Bolivia v. Tractman*, 107 B.R. 24, 26 (S.D.N.Y.1989); *Miller*, 97 B.R. at 763. When a debtor is involved in several transactions of an extensive nature, a "substantially accurate and complete record of [her] affairs is a prerequisite to [her] discharge" unless there is a justification for the lack of records. *Id.*

■ The court has broad discretion in determining whether the records produced by the debtor are sufficient under the standard set forth in *Underhill. In re Kearns*, 149 B.R. 189 (Bankr.D.Kan.1992); *In re Farouki*, 133 B.R. 769, 781 (Bankr.E.D.Va. 1991); *Shapiro*, 59 B.R. at 848. A court should not be required to speculate as to any loss of assets that have been in the debtor's possession, nor should the trustee or creditors be required to reconstruct the debtor's affairs. *Pimpinella*, 133 B.R. at 698; *Shapiro*, 59 B.R. at 848. The burden of proving the adequacy of the debtor's records rests with the party challenging the records. *In re Martin*, 554 F.2d 55, 58 (2d Cir.1977); *Shapiro*, 59 B.R. at 848.

■ In determining the adequacy of a debtor's financial records, courts have focused on numerous factors. The most significant factors include:

whether a debtor was engaged in business and, if so, the complexity and volume of the business; the amount of the debtor's obligations; whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; the debtor's education, business experience and sophistication; the customary business practices for record keeping in the debtor's type of business; the degree of accuracy disclosed by the debtor's existing books and records; the extent of any egregious conduct on the debtor's part; and the debtor's courtroom demeanor.

*In re Minesal*, 81 B.R. 477, 481 (Bankr. E.D.Wis.1988). *See also Goldstein*, 123 B.R. at 523; *In re Graham*, 111 B.R. 801, 806 (Bankr.E.D.Ark.1990); *In re Trogdon*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990).

■ Once it has been determined that the records are insufficient to enable the Court, the Trustee or the creditors to determine the financial affairs and business transactions of a debtor, the burden shifts to the debtor to justify any deficiencies. *Pimpinella*, 133 B.R. at 698; *In re Morando*, 116 B.R. 14, 15 (Bankr.D.Mass.1990) (citing *In re Goblick*, 93 B.R. 771, 775 (Bankr.M.D.Fla.1988)). If the debtor's transactions were such that "others in like circumstances would ordinarily keep financial records", *Martin*, 141 B.R. at 997, then she must show more than that "[s]he did not comprehend the need for them and must carry [her] explanation by way of justification to the point where it reasonably appears that because of unusual circumstances [s]he was under no duty to keep them." *In re Sandow*, 151 F.2d 807, 809 (2d Cir.1945)). *See also Morando*, 116 B.R. at 16 (debtor did not justify his failure to maintain adequate records merely by stating that he did not understand the need for them nor did he show that the circumstances were so unusual that ordinary record keeping was not required). Therefore, "the debtor has a duty to do more than profess a belief that her records were sufficient or that it was not her practice to keep additional records." *Pimpinella*, 133 B.R. at 698; *In re DeLancey*, 58 B.R. 762, 768 (Bankr.S.D.N.Y.1986) (quoting *Sandow*, 151 F.2d at 809)).

■ In the case before this Court, the records produced by the Debtor are not

sufficient to enable the Trustee to ascertain her financial condition. The Debtor provided the Trustee with a carton of records consisting of bills, checks, bank statements, and closing statements with respect to sales of real estate properties. The Debtor maintains that these written records readily establish her financial condition. However, a debtor cannot simply place sacks of records before the bankruptcy judge or trustee and request the judge or trustee to sift through the documents and attempt to reconstruct the flow of the debtor's assets. *In re Hughes,* 873 F.2d 262, 264 (11th Cir.1989); *Goldstein,* 123 B.R. at 525. The records must "be such as to allow the Trustee, the creditors, and the court to meaningfully reconstruct the debtor's financial status." *Goldstein,* 123 B.R. at 525. The debtor bears the burden of retaining comprehensible records. The trustee should not be required to sift through voluminous scraps of paper in order to trace assets. *Pimpinella,* 133 B.R. at 699.

> [H]owever informal the record keeping, the financial history of a debtor must be preserved in enough of a paper trail so that those concerned ... need not be experienced explorers of a rat's nest of scraps of uncoordinated bits and pieces like parts of some impressionistic puzzle that needs to be solved in order to decipher the financial machinations of the debtor.

*Morando,* 116 B.R. at 16.

In addition, the production of the particular types of documents submitted by the Debtor are insufficient to enable the Trustee to determine the Debtor's financial condition. *Goldstein,* 123 B.R. at 524; *In re Schultz,* 71 B.R. 711 (Bankr.E.D.Pa.1987). *See Shapiro,* 59 B.R. at 850 (check stubs and notes made on checks held to be insufficient records); *Morando,* 116 B.R. at 15 (business account records such as check stubs, cancelled checks and bank statements held to be insufficient to document complex business transactions).

Furthermore, the admittedly false tax return submitted by the Debtor is not sufficient to enable the Trustee to ascertain the reasons behind the demise of the Debtor's business. Even if the tax returns were accurate, tax returns "prepared by an accountant from whatever records the accountant can garner from the tax payer, are not a significant indicia of sufficient record keeping. The tax returns themselves clearly do not provide sufficient documentation, since they fail to provide itemization of transactions." *Goldstein,* 123 B.R. at 524–25 (citing *Underhill,* 82 F.2d at 260); *In re Switzer,* 55 B.R. 991, 995 (Bankr.S.D.N.Y.1986). The fact that the Debtor admitted to falsifying the tax returns submitted to the Trustee further hinders his ability to ascertain her financial condition.

The Debtor has failed to justify her inability to keep and preserve adequate records and papers from which her financial condition or business transactions might be ascertained. Accordingly, pursuant to § 727(a)(3) of the Bankruptcy Code, the Debtor's discharge is denied.

■ Section 727(a)(4)(A) excepts from discharge any debtor who "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A). In order to deny a debtor its discharge pursuant to this section, the objecting creditor must establish the following elements: (1) the debtor made a statement under oath; (2) such statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992) (citing *Sapru,* 127 B.R. at 314); *In re Brooks,* 58 B.R. 462, 465 (Bankr.W.D.Pa.1986); *In re Shebel,* 54 B.R. 199, 202 (Bankr.D.Vt.1985). A false oath sufficient to justify the denial of a discharge pursuant to § 727(a)(4)(A)

includes "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." *Beaubouef*, 966 F.2d at 178; *In re Colburn*, 145 B.R. 851, 857 (Bankr.E.D.Va. 1992); *Sapru*, 127 B.R. at 314; *In re Bailey*, 53 B.R. 732, 735 (Bankr.W.D.Ky.1985). However, in the present case, while the Trustee has demonstrated that the Debtor fraudulently filed false income tax returns with the Internal Revenue Service, the complaint fails to show that the income tax returns constitute a false statement made under oath during the course of bankruptcy proceedings. In fact, any falsity on the Debtor's income tax returns which was admitted by the Debtor, herself, during the course of the Section 341 meetings is a matter which may be of concern to the Internal Revenue Service. Therefore, the denial of the Debtor's discharge pursuant § 727(a)(4)(A) is not justified.

### CONCLUSIONS

1. This Court has jurisdiction over this matter pursuant 28 U.S.C. §§ 1334 and 157(b)(2)(J) as it is a core proceeding concerning an objection to the discharge of the Debtor.

2. The discharge of the Debtor is denied pursuant to § 727(a)(3).

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.