In re Philip M. MOREAU and
Linda L. Moreau, Debtors.

James J. McGRATH, d/b/a Solar
Enclosures of Connecticut,
Plaintiff,

v.

Philip M. MOREAU, Linda L. Moreau,
and Gilbert L. Rosenbaum, Chapter
7 Trustee, Defendants.

Bankruptcy No. 91–51559.

Adv. Nos. 92–5054, 92–5055.

United States Bankruptcy Court,
D. Connecticut.

Dec. 21, 1993.

Janice M. McGrath, Fairfield, CT, for plaintiff.

John B. Rust, Stratford, CT, for defendants.

## MEMORANDUM AND ORDER ON OBJECTIONS TO DISCHARGE AND OBJECTION TO THE DISCHARGEABILITY OF A DEBT

ALAN H.W. SHIFF, Bankruptcy Judge.

On February 27, 1992, the plaintiff commenced these adversary proceedings for a determination that the defendants should not be granted a discharge, see Adv.P. No. 92–5054 and that a debt owed by the defendants is not dischargeable, see Adv.P. No. 92–5055. On September 9, 1992, these adversary proceedings were consolidated for trial. Because, for the reasons that follow, I conclude that the plaintiff has sustained the burden of proving that the defendants should be denied a discharge, judgment will enter in favor of the plaintiff in Adv.P. No. 92–5054. Adversary proceeding no. 92–5055 will be dismissed as moot.

### BACKGROUND

The uncontroverted facts follow. On June 10, 1990, the defendant Philip Moreau (hereafter, "the debtor") renewed a previous contract with the plaintiff, who specializes in the design and construction of precision built roofing systems, and negotiated a contract to build a roof over a sunroom and kitchen the defendants were building at their home. The plaintiff designed a support system for a cathedral roof to span both rooms and stated that the design and construction of the roof would cost $28,000.00. The debtor thought that was too expensive and the parties agreed to a $20,000.00 contract price on the understanding that the debtor, who was taking an active role in coordinating the construction of the rooms, would assist with the assembly of the support beams. It was also agreed that the debtor would pay one-third of the contract price upon approval of financing, one-third upon the erection of the beams, and one-third upon completion of the project.

The debtor assured the plaintiff that his financing was in place but that the loan proceeds were not yet available because the debtor had not been able to schedule a closing. The debtor declined to enter into a written contract with the plaintiff until the financing was concluded but stated that he earned over $100,000.00 per year as a truck driver, had condominiums in Florida and Rhode Island, and was financially secure. During the first week of October, 1990, the plaintiff agreed to order materials and begin the construction of the beam in reliance upon these representations and because of the debtor's insistence that it was necessary to complete the roof before winter.

In August 1989, an action was commenced to foreclose a lien on the defendants' home, and on the 27th of that month, a notice of lis pendens was recorded in the local land records. The debtor did not disclose those events to the plaintiff.

The plaintiff repeatedly inquired about the progress of the refinancing and the debtor assured him that the delay was caused by his inability to get to the bank during business hours. By the middle of October, 1990, after the plaintiff had performed a substantial portion of the required work, the debtor told the plaintiff that the home equity loan would not be granted by the original source but that the plaintiff should not place a mechanic's lien on the debtor's house because he was going to apply for financing from other sources and the mechanic's lien would interfere with those efforts. The plaintiff agreed to that request.

In mid-October, 1990, the debtor insisted upon using a hydraulic crane to lift the support beams into place rather than using the plaintiff's smaller hoist. Although the debtor represented that he would pay the additional $700 cost of using that crane, the plaintiff had to pay it. The debtor told the plaintiff to add that amount to his bill.

On October 25, 1990, the debtor had a discussion with the attorney representing the creditor who had commenced the foreclosure action about the commencement of a bankruptcy case under chapter 13. On November 7, 1990, he attempted to retain that attorney,

but the attorney declined due to a conflict of interest.

In the middle of November, 1990, the plaintiff contacted a roofer to help finish shingling the roof before the onset of winter. It is noted that shingling was not part of the plaintiff's contract. The debtor agreed to pay the roofer $1,000.00 for his work which was expected to take two days. According to the roofer's testimony, the defendant Linda Moreau told him on the evening of the first day, "If you think your friend Jim [the plaintiff] is going to get one penny, you are mistaken." When the plaintiff confronted the debtor about that statement, the debtor replied that he was 100 percent satisfied with the craftsmanship and materials and absolutely intended to pay the agreed price, but that the plaintiff should advance the $1,000.00 and add it to the contract price because the debtor was having a temporary cash flow problem.

Shortly thereafter the debtor told the plaintiff that he could no longer obtain financing because the market value of his home had declined. The debtor suggested that the plaintiff loan the defendants the contract price which was then $21,000.00, which would be repaid in three years. On November 26, 1990, the plaintiff presented a written contract formalizing their earlier agreement but changed the payment terms to three years with interest at 15 percent. The debtor declined, stating that he wanted certain guarantees and a ten year payment term. On December 9, 1990, the debtor, Linda Moreau and the plaintiff executed an agreement (the "Contract"), *Plaintiff's Exhibit H*, which provided for payment of $21,000.00 over ten years with interest at 15 percent.

On December 17, 1990, only eight days after the Contract was executed, the defendants commenced a chapter 13 case. The debtor did not inform the plaintiff, who continued to work on the project until December 27, 1990 when he received notice from the bankruptcy court. The plaintiff testified that, had he known that the defendants intended to file bankruptcy, he would not have entered into the Contract. The defendants' case was dismissed on June 5, 1991. On June 11, 1991, the instant case was commenced by an involuntary chapter 7 petition. On June 24, 1991, the defendants commenced a chapter 13 case which was dismissed on September 11, 1991. On August 8, 1991, an order for relief entered in the instant case. *See* § 303(h). On September 11, 1991, this case was converted to chapter 13, and on January 29, 1992, it was reconverted to a chapter 7 case.

At the debtor's September 27, 1991, deposition, he admitted that he had burned the defendants' 1990 bank statements and checks after an argument with his wife. During the trial, the plaintiff testified that the defendants failed to produce certain financial records in response to subpoenas, including: documents relating to the refinancing of their home, bank statements, copies of loan applications, check registers, canceled checks for 1990, documentation for the transactions underlying their debts on lines of credit and charge cards, and correspondence relating to the foreclosure action on the defendants' home. *See Plaintiff's Exhibits Q, T, and U.* The cancelled checks that were produced were contained in a brown paper bag and were completely disorganized and incomplete. The defendants did not attend the trial and offered no explanation for their failure to produce the subpoenaed documents.

## DISCUSSION

### 1.

### Standing

■ The defendants argue that because they challenge the enforceability of the plaintiff's claim, the plaintiff is not their "creditor" and therefore he lacks standing to bring these actions. That argument is wholly without merit. By the defendants' logic, a debtor who listed a creditor in the schedules accompanying the bankruptcy petition can eliminate the right of that creditor to challenge the debtor's discharge or the dischargeability of the corresponding claim by merely disputing its validity. That argument overlooks the plain language of the statute and the case law on that subject. A "creditor" is an "entity that has a claim against the debtor that

arose at the time of or before the order for relief concerning the debtor." § 101(10). A "claim" includes any right to payment, even if that right is disputed. § 101(5); *see Johnson v. Home State Bank,* 501 U.S. 78, ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("Congress intended ... to adopt the broadest available definition of 'claim.' ").[1] The term "debt" is defined as "liability on a claim." § 101(2). Thus an entity claiming a right to payment that arose pre-petition is a creditor even if the debtor disputes its claim, and every creditor has standing to challenge a debtor's discharge, *see* § 727(c)(1), and seek a determination that a debt is not dischargeable, *see* § 523(c)(1); Rule 4007(a), Fed.R.Bankr.P.[2] *See In re Ruhlman,* 279 F. 250, 252 (2d Cir.1922); *Am. Motors Leasing Corp. v. Morando (In re Morando),* 116 B.R. 14, 15 (Bankr.D.Mass.1990) (a creditor had standing to challenge the debtor's discharge even though the claim was disputed and the subject of litigation in the district court); *Stone v. Stone (In re Stone),* 90 B.R. 71, 73 (Bankr.S.D.N.Y.), *aff'd,* 94 B.R. 298 (S.D.N.Y.1988), *aff'd,* 880 F.2d 1318 (2d Cir. 1989) ("It is axiomatic that in light of the debtor's ability to discharge the plaintiff's claim because it is contingent and unliquidated, regardless of whether a proof of claim is filed, it follows this plaintiff has standing to seek a declaration that this claim is nondischargeable."); *Cosper v. Frederick,* 73 B.R. 636, 638 (Bankr.N.D.Fla.1986) (any entity holding a claim against the debtor may file a nondischargeability complaint, regardless of whether that claim is filed or allowable).

Of course, the defendants have the right to challenge the enforceability of the plaintiff's claim, *see* § 502(b)(1), and this court has jurisdiction to enter a judgment on a claim in a dischargeability action. *Peerless Ins. Co. v. Nedelka (In re Nedelka),* 155 B.R. 813, 817 (Bankr.D.Conn.1993); *United States Fire Ins. Co. v. Harris (In re Harris),* 155 B.R. 135, 136–37 (Bankr.E.D.Va.1993). Indeed, the defendants filed an objection to the allowance of the plaintiff's claim on June 24, 1992. The objection challenged the enforceability of the plaintiff's claim on the same grounds cited by the defendants in objecting to the plaintiff's standing to maintain these adversary proceedings. On July 28, 1992, the plaintiff moved for relief from the automatic stay to pursue his claim in state court, and the plaintiff received the requested relief by an order which entered August 28, 1992.[3] Accordingly, the issue of the enforceability of the plaintiff's claim is not now before this court. The fact that the state court may not yet have determined that issue in no way impacts on the plaintiff's standing to maintain the instant proceedings.

### 2.

### Section 727(a)

Code § 727(a) provides in relevant part: The court shall grant the debtor a discharge, unless—

. . . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The plaintiff has the burden of proving the essential elements of the alleged

---

1. The defendants point to the statement in *Johnson* that " 'right to payment' [means] nothing more nor less than an enforceable obligation." *Johnson, supra,* —— U.S. at ——, 111 S.Ct. at 2154, quoting *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). However, unless and until there is a determination to the contrary either by this court under § 502(a) and (b) or by another court with jurisdiction, the plaintiff's claim is allowed and enforceable, and the plaintiff may maintain these adversary proceedings. There is no suggestion in *Johnson* or *Davenport* that a debtor's unadjudicated challenge to a claim renders that claim unenforceable as a matter of law. As noted, such a rule would permit a debtor to dispute a claim and deprive the claimant of creditor standing.

2. It is noted that the defendants scheduled the plaintiff's claim as secured, unliquidated, but not disputed. *See Defendants' Schedule D,* filed September 27, 1991.

3. The order granting relief from the stay required the plaintiff to seek this court's approval prior to attempting to enforce any judgment obtained in the state court action.

ground for denying discharge under § 727(a). *See* Rule 4005, Fed.R.Bankr.P. Most recent decisions have adopted the fair preponderance of the evidence standard for § 727(a) actions. *See, e.g., Menchise v. Vincent (In re Vincent)*, 159 B.R. 595, 597 (Bankr.M.D.Fla. 1993); *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr.E.D.N.Y. 1993); *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 285 (Bankr.S.D.N.Y.1992), *aff'd*, 152 B.R. 830 (S.D.N.Y.1993); *see also Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991) (in dicta referring to § 727(a)(4)), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6340. In an action under § 727(a)(3), the plaintiff has the burden of establishing a prima facie case that the defendants concealed, destroyed, or failed to keep material records, and having done so, the burden then shifts to the defendants to go forward with rebuttal evidence that such act or failure was justified. *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr.E.D.N.Y.1993); *In re Wolfson*, supra, 139 B.R. at 285; *County Real Estate Corp. v. Ishahak (In re Ishahak)*, 130 B.R. 16, 19 (Bankr.E.D.N.Y.1991); *cf. EFA Acceptance Corp. v. Cadarette (In re Cadarette)*, 601 F.2d 648, 650 (2d Cir.1979) (under the Bankruptcy Act, after a party has established a prima facie case for denial of a discharge the burden shifts to the debtor to establish that the discharge should not be denied).

■ Section 727(a)(3) is designed to insure that the trustee and creditors will have sufficient information to permit an effective evaluation of the debtor's estate. *Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella)*, 133 B.R. 694, 697 (Bankr.E.D.N.Y.1991). A creditor need not demonstrate a debtor's intent to conceal his or her financial condition. *In re Frommann, supra*, 153 B.R. at 116. "Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies." *In re Underhill*, 82 F.2d 258, 259–260 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936) (construing § 727(a)(3)'s predecessor provision in the Bankruptcy Act). Furthermore, in order to be adequate, the financial records must disclose the business dealings of the debtor for a reasonable period of time into the past. *Office of the Comptroller Gen. v. Tractman*, 107 B.R. 24, 27 (S.D.N.Y.1989).

As this court has observed:

[D]ebtors must keep and preserve recorded information, including books, documents, records and papers from which the debtor's financial condition or business transactions may be ascertained.... The creditors ... are entitled to records so they may trace a debtor's cash flow and assets.... "There inheres in the duty to produce records from which the Debtor's financial condition can be ascertained, the duty to take reasonable precautions for the preservation of these records."

*Frehm v. Harron (In re Harron)*, 31 B.R. 466, 468–69 (Bankr.D.Conn.1983) (quoting *Tucker v. Devine (In re Devine)*, 11 B.R. 487, 488 (Bankr.D.Mass.1981)).

■ The plaintiff offered evidence that the debtor destroyed the defendants' canceled checks and bank statements for 1990. Moreover, the plaintiff offered evidence that he subpoenaed financial records and the defendants failed to produce those records. Those records would have contained material information respecting the defendants' financial condition prior to commencement of their bankruptcy case and would be essential for the adequate disclosure of the defendants' financial condition. The subpoenas offered into evidence by the plaintiff commanded both of the defendants to produce the documents described. Accordingly, I conclude that the plaintiff established a prima facie case that the defendants destroyed and concealed records which were necessary to reveal their true financial condition and business transactions. The burden of going forward therefore passed to the defendants to justify or explain the destruction and concealment of those records. The defendants not only failed to offer any justification or explanation but, as noted, failed to attend the trial.

In light of the above conclusions the plaintiff's allegations premised on § 727(a)(2) and (5) and § 523(a)(2)(A) need not be reached.

## ORDER

For the foregoing reasons, the discharge of the defendants Philip M. Moreau and Linda L. Moreau shall be denied pursuant to § 727(a)(3), Adv.P. No. 92–5055 shall dismissed as moot, and IT IS SO ORDERED.