In re Francis X. WAZETER, III, Debtor.

Francis X. WAZETER, III, Appellant,

v.

MICHIGAN NATIONAL BANK, a Michigan banking corporation, Appellee.

Bankruptcy No. GK95–83716.
Adversary No. 95–8450.

United States District Court, W.D. Michigan, Southern Division.

June 5, 1997.

John D. Pirich, Sandra L. Jasinski, Honigman, Miller, Schwartz & Cohn, Lansing, MI, Jonathan F. Thoits, Day & Sawdey, P.C., Grand Rapids, MI, for appellant–debtor.

Michael McElwee, Varnum, Riddering, Schmidt & Howlett, Kalamazoo, MI, for appellee.

John D. Pirich, Sandra L. Jasinski, Honigman, Miller, Schwartz & Cohn, Lansing, MI, for debtor.

## OPINION

DOUGLAS W. HILLMAN, Senior District Judge.

Debtor, Francis X. Wazeter, III, appeals the decision of the bankruptcy court denying his discharge, pursuant to 11 U.S.C. § 727(a)(3). I reverse.

### BACKGROUND

On July 27, 1995, debtor Francis Wazeter, III ("debtor" or "Wazeter") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. On December 15, 1995, Michigan National Bank ("MNB") filed a complaint objecting to Wazeter's discharge pursuant to 11 U.S.C. §§ 523 and 727. On November 19, 1996, following oral argument, the bankruptcy court granted MNB's motion for summary judgment under 11 U.S.C. § 727(a)(3), based on Wazeter's failure to keep adequate records.

Although lengthy discussion of debtor's background and lifestyle is unnecessary, some background is required to identify the

basis for MNB's claims concerning inadequate recordkeeping.

Wazeter is a graduate of Kalamazoo College and Cooley Law School, although he has never been admitted to the Michigan Bar. Prior to 1995, he was employed by International Research and Development Corporation ("IRDC"). IRDC was a publicly traded company located in Mattawan, Michigan, whose principal business was an animal testing laboratory. IRDC was started in 1960 by debtor's father.

Beginning in 1985, debtor worked full-time with IRDC, holding various officer and managerial positions. From 1986 through January 1995, debtor served on the IRDC board of directors. In 1991, he was named Chief Operating Officer ("COO"). In 1994, upon his father's decision to step down, debtor was named President and Chief Executive Officer ("CEO") of the company.

During debtor's tenure with IRDC, the company had operations and subsidiaries in Michigan, Florida, California, Japan and France. IRDC had annual sales of $25 million and employed hundreds of people. During his tenure as COO and CEO, debtor was responsible for the general operation of the company, as well as decisions to acquire other businesses and properties. He regularly consulted with investment bankers, corporate and litigation counsel and public accountants. As CEO, debtor had responsibility for SEC compliance and other regulatory reporting.

Debtor earned over $200,000 per year in compensation from IRDC. In addition, as debtor has not disputed, he received substantial non-salary compensation. Specifically, debtor received at least the following from IRDC: a company-provided Jaguar, paid country club membership, certain paid luxury vacations, a company-paid down payment on a piece of real property, and certain extraordinary reimbursements (including at least one $5,000 "management fee"). In addition, the company paid some of debtor's personal bills, including purchase of an $8,000 lawn mower. Further, debtor does not dispute that while traveling on company business, he charged a number of personal purchases to the company, including an oriental vase valued variously at several hundred or several

thousand dollars. During the two years before his filing for bankruptcy, debtor purchased and sold nearly $2 million worth of real estate. At the time of his bankruptcy filing, debtor owned at least four real properties valued at $1.3 million, together with a boat slip and a $70,000 yacht.

In 1990, debtor recommended that IRDC acquire a company called Carmé, Inc., whose primary business was the manufacture and sale of personal hygiene products marketed on a "no-animal testing" basis. After Carmé was acquired in 1990, debtor became president of the subsidiary. The acquisition of Carmé was expensive and risky, and its performance after acquisition was poor, with Carmé posting several significant consecutive losses. Between 1992 and January 1995, when debtor was fired, over $2.4 million of fraudulent accounts receivable were recorded on the books of Carmé. IRDC ultimately was forced to write off the nonreceivables and found itself overdrawn on its line of credit at MNB. Following investigations by IRDC and MNB, debtor was discharged. While debtor has disputed that he was involved in the fraud, he has not disputed the existence of the underlying fraud at Carmé'. The cumulative effects of the fraud and the general business posture caused both Carmé and IRDC to file for bankruptcy in late 1995. Debtor filed his personal petition for bankruptcy in July 1995.

Debtor's production of records to creditors was slow and scattered. Producing some documents allegedly was delayed by the fact that many documents were held by attorneys representing debtor in a breach of contract action against IRDC in addition to an investigation conducted by the SEC. Eventually, however, debtor produced a variety of documents contained in two boxes, the specifics of which were not identified either to this court or to the bankruptcy court.

As the bankruptcy court observed, debtor's affidavit in opposition to the motion for summary judgment made no representation that the records that he produced were complete. In fact, it is undisputed that debtor failed to produce a range of documents in various categories. The bankruptcy court relied

upon these undisputed nondisclosures in reaching its legal conclusion. Specifically, debtor did not dispute that he had failed to produce the following information: (1) any canceled checks, check register or checking account statement for 1994 and 1995; (2) any record of loan transactions with his father or other family members in the year preceding the filing of bankruptcy; (3) documents kept in two dozen labeled files kept at IRDC; (4) any record of in-kind distribution made to him by IRDC in recent years; (5) any closing files or other records concerning real estate transactions; (6) any household bills, including utilities, credit cards, etc.; (7) any documents related to the trusts of which he was beneficiary.

### DISCUSSION

The bankruptcy court granted MNB's motion for summary judgment solely on the basis of 11 U.S.C. § 727(a)(3). Accordingly, the sole issue on appeal is the appropriateness of the grant of summary judgment under that statute.

#### A. *Standard of Review*

Pursuant to Fed. R. Bankr.P. 7056, Fed. R.Civ.P. 56 applies to adversary proceedings in bankruptcy matters. On a motion for summary judgment under Fed.R.Civ.P. 56, the court must consider all pleadings, depositions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate that there exists a genuine issue for trial. *Id.*

In order to prove the existence of a triable issue, the nonmoving party must do more than rely upon allegations, but must come forward with specific facts in support of his claim. *Id.* After reviewing the whole record, the court must determine "whether the evidence presents a sufficient disagreement to require submission to [the factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). " '[D]iscredited testimony is not [normally] considered a sufficient basis' " for defeating the motion. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15 (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984)). In addition, where the factual context makes a party's claim implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56; *Street,* 886 F.2d at 1480.

Because a decision of the bankruptcy court to grant or deny summary judgment is a question of law, it is reviewed by this court *de novo. In re Varrasso,* 37 F.3d 760, 763 (1st Cir.1994). *Cf. Booker,* 879 F.2d at 1310 (on review of grant or denial of summary judgment, reviewing court's role is identical to that of trial court).

#### B. *Requirements of 11 U.S.C. § 727(a)(3)*

■ Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge in bankruptcy unless one or more of eight conditions is met. Consistent with the "fresh start" policy underlying the bankruptcy code, these exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir.1996). Courts recognize, however, that "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Id.*

■ Under 11 U.S.C. § 727(a)(3):

(a) The court shall grant the debtor a discharge, unless—

\* \* \*

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

The section requires as a precondition to discharge that debtors produce records "which provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present.'" *In re Juzwiak,* 89 F.3d at 427 (quoting *In re Martin,* 141 B.R. 986, 995 (Bankr.N.D.Ill.1992)). The purpose of the section is to give the trustee and creditors complete and accurate information concerning the status of the debtor's affairs and financial history and to test the completeness of the disclosure requirements to a discharge. *See Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992). "[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." *In re Juzwiak,* 89 F.3d at 428. *See also In re Frommann,* 153 B.R. 113, 116 (Bankr.E.D.N.Y. 1993). Where the debtors are married, both have an obligation to keep adequate records. *In re Cox,* 904 F.2d 1399, 1402 (9th Cir.1990). Intent is not an element to a § 727(a)(3) objection to discharge. *In re Cox,* 904 F.2d at 1402; *In re Pulos,* 168 B.R. 682, 689 (Bankr.D.Minn.1994); *In re Potter,* 88 B.R. 843, 848 (Bankr.N.D.Ill.1988).

 The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records. *Pulos,* 168 B.R. at 689. "The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'" *Meridian Bank,* 958 F.2d at 1231 (quoting *In re Decker,* 595

F.2d 185, 187 (3d Cir.1979)). Once the moving party has shown that the debtor's records are inadequate, the burden shifts to the debtor to prove that the failure to keep adequate records was justified under the circumstances. *Id.* While summary judgment is not per se improper in a § 727 proceeding, many courts have expressed reluctance to rule on dischargeability issues on summary judgment without permitting the debtor to testify. *See, e.g., In re Lenard,* 140 B.R. 550, 555 (D.Colo.1992); *In re Mathern,* 137 B.R. 311, 318 n. 7 (Bankr.D.Minn.) (courts often not inclined to grant summary judgment on objections to discharge under §§ 727(a)(3) and (a)(5)), *aff'd,* 141 B.R. 667 (D.Minn.1992); *In re Perry,* 119 B.R. 24, 28 (Bankr.S.D.N.Y. 1990) (denying summary judgment under § 727 to give debtor opportunity to explain actions and to enable court to assess her credibility).

### 1. Adequacy of Records

In determining the adequacy of records, courts generally have measured the quality of a debtor's records "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience." *In re Wynn,* 205 B.R. 97, 101 (Bankr. N.D.Ohio 1997). In order to prove inadequate records, some courts have adopted the test first stated by the Third Circuit:

In order to state a prima facie case under section 727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.

*Meridian Bank,* 958 F.2d at 1232 (citing *Decker,* 595 F.2d at 187). *See also In re Brown,* 108 F.3d 1290 (10th Cir.1997); *In re Cox,* 41 F.3d 1294 (9th Cir.1994). Others, however, have applied the more general requirement that "debtors produce records which provide creditors 'with enough information to ascertain the debtor's financial condition and track his accuracy for a reasonable period past to present.'" *In re Juzwiak,* 89

F.3d at 427 (quoting *In re Martin,* 141 B.R. 986, 995 (Bankr.N.D.Ill.1992)).

As previously noted, debtor has not contended that the records he provided were complete. Although debtor makes certain explanations concerning why particular records were unavailable or immaterial, he does not dispute that he failed to produce at least the following information: (1) any canceled check, check register or checking account statement for 1994 and 1995; (2) any record of loan transactions with his father or other family members in the year preceding the filing of bankruptcy; (3) any document kept in two dozen labeled files kept at IRDC; (4) any record of in-kind distribution or extraordinary payments made to him by IRDC in recent years; (5) any closing files or other records concerning real estate transactions; (6) any household bills, including utilities, credit cards, etc.; (7) any documents related to the trusts of which he was beneficiary.

Instead of asserting completeness, debtor contends that MNB failed to prove the inadequacy of the records because it failed to provide any proof that the concededly missing records were necessary to reconstruct his financial history. Essentially, Wazeter claims that the records he provided were adequate in light of MNB's ability to investigate and gather other records. He asserts that in his deposition testimony, he provided sufficient information for MNB to construct the necessary financial records by subpoenaing various financial institutions and title companies. In addition, Wazeter contends that the bank already possesses his complete checking history because his checking account was with MNB. As a result, debtor suggests that the bankruptcy court erred in concluding that MNB was entitled to summary judgment on its motion to bar discharge because MNB failed to prove that the missing records were necessary to construct the financial history.

Debtor's argument that MNB could and should have reconstructed his financial condition is legally untenable. First, the statute requires a debtor to maintain adequate records. A creditor is not required to "rely on [the debtor's] unsubstantiated oral testimony regarding the source of the funds deposited

and the details of certain disbursements." *In re Juzwiak,* 89 F.3d at 429.

Second, as the bankruptcy court noted, the burden was not on MNB to investigate and acquire necessary records. Instead, the burden was on the debtor to produce them. *See* 11 U.S.C. § 521(4) (requiring that "[t]he debtor shall ... if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and paper, relating to the property of the estate...."). 

Courts routinely have rejected debtors' assertions that creditors could have assembled the necessary records from alternate sources:

> The Bankrupt's creditors are not required to risk the concealment of assets under the guise of a chaotic or incomplete set of records. The Bankrupt's admitted failure to keep any financial records as to his personal affairs or as to the whereabouts of the $206,000 he withdrew from his business the year before the petition amply supports [the creditors'] Motion for Summary Judgment denying the Bankrupt's discharge. There are no genuine issues of fact as to this issue, since those who had a right to know, namely the Trustee and the Bankrupt's creditors, simply had no basis for ascertaining his true financial condition when he filed his ... petition. Having been legally obligated to keep some meaningful records as to his personal affairs, which were extensive and involved large amounts of cash, the Bankrupt's discharge must be denied.

*In re Silverman,* 10 B.R. 727, 732 (Bankr. S.D.N.Y.1981) (granting summary judgment). *See also In re Juzwiak,* 89 F.3d at 429 ("[T]he burden is not on the creditor to organize and reconstruct the debtor's business affairs."); *United States v. Ellis,* 50 F.3d 419, 425 (7th Cir.) ("Creditors should not be forced to undertake an independent investigation of a debtor's affairs; rather they have a right to be 'supplied with dependable information on which they can rely in tracing a debtor's financial history.'"), *cert. denied,* —— U.S. ——, 116 S.Ct. 143, 133 L.Ed.2d 89 (1995); *In re Wiess,* 132 B.R. 588,

593 (Bankr.E.D.Ark.1991) ("It is well settled that a creditor/trustee should not be required to drag information from a reluctant and uncooperative debtor."); *In re Tully*, 818 F.2d 106 (1st Cir.1987) ("Because of the extraordinary relief offered under the Bankruptcy Code, delay and avoidance tactics are inconsistent with, and offensive to, its purpose and spirit."); *In re Frommann*, 153 B.R. 113, 117 (Bankr.E.D.N.Y.1993) ("[N]or should the trustee or creditors be required to reconstruct the debtor's affairs.").

Wazeter suggests, however, that his position is supported by those courts adopting the two-part test for adequacy, which requires a showing that the lack of records "makes it *impossible* to ascertain the debtor's financial condition...." *Meridian Bank*, 958 F.2d at 1232 (emphasis added). In stating the "impossibility" test, however, no court has suggested that it means that a debtor is relieved from the burden of providing records unless the creditor can show the impossibility of discovering each piece of necessary financial information. The debtor's obligation to produce records remains a prerequisite to discharge under the statute.

Debtor also claims that his position is supported by a decision by Judge McKeague from this district affirming the bankruptcy court's grant of discharge over the creditors' objections to the adequacy of records. *In re Campbell*, No. 1:93–cv–929 (Sept. 28, 1994). In *In re Campbell*, the bankruptcy court allowed discharge, despite the existence of incomplete records. The bankruptcy court concluded and the district court affirmed that the creditors had failed to prove that debtor's records were inadequate to allow creditors to reconstruct the debtor's financial history. In reaching this conclusion, however, both the bankruptcy court and the district court relied heavily on the opinion of debtor's expert, Robert Schellenberg, C.P.A., who was able to reconstruct in extensive detail debtor's financial circumstances from the records provided by debtor. As the court noted, while a better job of recordkeeping could have been done, the failures were insufficient to deny a discharge because, incomplete as they were, the records provided sufficient information for a creditor to reconstruct the financial history, as evidenced by debtor's expert's ability to reconstruct that history from the same records. The court therefore concluded that the records were not "inadequate" within the meaning of the statute.

*In re Campbell* does not support debtor's argument that a creditor is obligated to show that each piece of missing information was not recoverable from other sources. Instead, *In re Campbell* stands for nothing more nor less that the basic proposition that records will not be deemed inadequate where it is possible to reconstruct the debtor's financial condition from those records he has produced, however incomplete such records may be.

I conclude, therefore, that the question is not whether plaintiff bank could have obtained from other sources some or all of the records necessary to reconstruct the debtor's history. Instead, the question is whether the bank demonstrated a prima facie case that debtor's financial history could not be constructed from the records provided by the debtor.

In the instant case, no dispute exists that substantial and significant categories of information were not provided by debtor. It is conceded, however, by plaintiff bank that MNB eventually received two boxes of documents from debtor. I am unable to determine specifically what documents were produced because the bank has failed to detail the contents of the records it received from debtor. Nor did the bank provide any expert testimony that Wazeter's financial history could not be constructed from the records he provided. *See In re Wynn*, 205 B.R. 97, 101 (Bankr.N.D.Ohio 1997) (denying summary judgment and noting that the creditor had failed to present evidence that creditors were unable to ascertain the debtor's financial condition from the debtor's existing records) (citing *In re Dolin*, 799 F.2d 251, 253 (6th Cir.1986)).

I acknowledge that various cases have suggested that certain categories of information may be essential to determining a debtor's history. *See In re Juzwiak*, 89 F.3d at 428 (holding that chaotic and piece-meal records were insufficient to determine financial history); *In re Pulos*, 168 B.R. 682 (holding that

missing records, including records of a brokerage account, checking account, credit cards, tax returns, and transfers of real property were the kinds of evidence necessary to determine financial history); *In re Frommann,* 153 B.R. at 116–18 (carton of bills, checks, bank statements, closing statements and tax returns insufficient to determine debtor's financial condition); *Vetri v. Meadowbrook Mall Co.,* 174 B.R. 143, 146 (M.D.Fla.1994 ) (bank statements, canceled checks and deposit slips not identifying source of funds inadequate). Debtor has not disputed that such categories of evidence were missing. I also acknowledge that debtor has not seriously contended that his financial condition could be determined from those records he did supply. But on a motion for summary judgment, the party bearing the burden of proof on an issue has the obligation to introduce evidence on every element of its case. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53 (linking obligation to introduce evidence in support of claim to party with burden of proof at trial); *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) ("The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case."), *cert. denied,* — U.S. —, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997). In the absence of any specific evidence concerning what documents debtor produced or whether the documents produced were inadequate for creditors to reconstruct debtor's financial history, I conclude that plaintiff bank failed to provide sufficient evidence on one element of its prima facie case. Debtor's obligation to supply competing evidence does not arise until such time as the bank has proved a prima facie case.

Accordingly, I conclude that plaintiff bank has failed to establish the absence of genuine issue of material fact concerning the inadequacy of debtor's records.

### 2. Justification

Because it concluded that debtor had failed to produce adequate records, the bankruptcy court reached the question of whether debtor had demonstrated a factual question concerning justification for the inadequacy. The bankruptcy court concluded that debtor had failed to demonstrate a factual question on the issue of justification. Debtor also appeals this determination.

The burden is on the debtor to prove that his failure to keep adequate records was justified under the circumstances. *See In re Cox,* 41 F.3d at 1297. "If the lack of records is not adequately explained, the debtor is not entitled to a discharge." *In re Pulos,* 168 B.R. at 690. "If the nature and extent of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, [ ]he must show more than that [ ]he did not comprehend the need for them." *In re Cox,* 41 F.3d at 1297. The justification must indicate that because of unusual circumstance, the debtor was absolved from the duty to maintain records. *Id.*

Courts routinely consider a variety of factors in determining whether the inadequacy of the debtor's records was justifiable. Such factors include the debtor's education, sophistication, business experience, size and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances. *See Pulos,* 168 B.R. at 692.

Debtor contends that there exists a genuine issue of material fact about whether he was a sophisticated debtor for purposes of justifying his failure to maintain records. Debtor acknowledges that he possesses a J.D., that he had a $200,000 authorized annual salary, and that since 1985 he sat on the board of a publicly-held international corporation, of which he became president in 1994. Debtor contends, however, that because he failed the bar examination three times and because he implies that he was made president of the corporation only because of family nepotism, he has raised a genuine issue of material fact concerning his sophistication.

I disagree. As the bankruptcy court reasonably concluded, on the admitted background and educational facts, no rational trier of fact could conclude that he should not be held to the standard of recordkeeping of a reasonably sophisticated business person. *See Meridian Bank* 958 F.2d at 1232 (professionals held to standards of others similarly situated). Mere failure to pass the bar ex-

amination does not raise a genuine issue of material fact on debtor's sophistication. *Cf. Day v. Topsnik,* No. 87–1550, 1988 WL 63757, *3 n. 1 (9th Cir.1988) (rejecting businessman's suggestion that a genuine issue of material fact on his level of sophistication was created by evidence that his business failed; such a theory would result in few persons ever being adjudged "sophisticated").

▌ In addition, Wazeter's representations about his routine practices fail to demonstrate a genuine issue of material fact that his failure to keep records was justified. Debtor places great emphasis on his affidavit in which he claims he had no intention to prevent creditors from seeing his financial records. He claims that he simply followed a routine policy of purging checking account and credit card records at the end of each month. He also claims to have discarded all financial information not necessary to support his tax return at the end of each year's tax preparation cycle. He further claims that routinely he did not keep closing documents on real estate transactions because most such documents would be available as a matter of public record. Finally, debtor claims those records he had he turned over to his attorney in an earlier lawsuit against his employer for wrongful discharge and again to other attorneys representing him in an SEC investigation. While he has not substantiated any specific records he believes were lost, he contends that he originally delivered three boxes of records and only got two back.

As the bankruptcy court noted, intent is not an issue in a denial of discharge under § 727(a)(3). *See In re Cox,* 904 F.2d at 1402. Wazeter's state of mind therefore does not constitute a justification for his failure to keep records. No reasonably sophisticated business person would consider it appropriate to routinely purge all financial records and fail to keep such important records as real estate closing documents. *See In re Calisoff,* 92 B.R. 346, 356 (Bankr.N.D.Ill. 1988) (holding that no experienced business person would fail to keep all records of financial transactions).

Wazeter next asserts that the bankruptcy court improperly relied upon his invocation of the Fifth Amendment as a substitute for proof of the claim being pressed by the bank. He acknowledges that the trier of fact in a civil case may draw an adverse inference from a witness' assertion of his privilege against self-incrimination under the Fifth Amendment. *See Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). He contends, however, that his taking the Fifth Amendment does not itself constitute proof of the inadequacy of his recordkeeping.

▌ Debtor's argument, however, misconstrues the bankruptcy court's analysis of the interplay between the Fifth Amendment and the Bankruptcy Code. Debtor contends that the bankruptcy court substituted the invocation of Fifth Amendment rights for evidence of inadequate records. The debtor is incorrect in arriving at this conclusion. The court instead concluded that the invocation of such rights could not relieve debtor of his burden to prove justification. The court's discussion of the Fifth Amendment was addressed solely to the question of whether debtor had introduced evidence from which a reasonable trier of fact could find his failure to keep records was justified.

That conclusion is patently correct. As the bankruptcy judge held, protection in bankruptcy is not a fundamental right. *See United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), *cited with approval in Grogan v. Garner,* 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991) ("We have previously held that a debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy."). *See also In re Metzgar,* 127 B.R. 708 (Bankr. M.D.Fla.1991). In order to be entitled to the benefit of a discharge in bankruptcy, debtor was required to fully disclose all information and records necessary to determine the financial condition of the estate. Accordingly, I find no error in the bankruptcy court's conclusion that debtor failed to introduce evidence that would support a factfinder's conclusion that his failure to produce was substantially justified.

## CONCLUSION

For the foregoing reasons, I affirm the bankruptcy judge's conclusion that debtor failed to demonstrate a genuine issue of material fact on the question of justification. However, because I conclude that plaintiff failed to present sufficient evidence to make out its prima facie case of the inadequacy of debtor's records, I reverse the judgment of the bankruptcy court granting summary judgment to plaintiff bank.