In re Aaron Larry JARRETT and Darleen F. Jarrett, Debtors.

Richard F. Clippard, United States Trustee, Region 8, Plaintiff,

v.

Aaron Larry Jarrett and Darleen F. Jarrett, Defendants.

Bankruptcy No. 07–26383–DSK.
Adversary No. 08–064.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Oct. 21, 2009.

---

J. Steven Wilkes, Madalyn Scott Greenwood, U.S. Department of Justice, Office of the U.S. Trustee for Region 8, Memphis, TN, for Plaintiff.

Russell W. Savory, Memphis, TN, for Defendants.

## MEMORANDUM AND ORDER RE PLAINTIFF'S COMPLAINT OBJECTING TO DEBTORS' GENERAL DISCHARGES COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Bankruptcy Judge.

This adversary proceeding arises out of a complaint filed by the plaintiff, Richard F. Clippard, United States Trustee, Region 8 ("Plaintiff"), against the defendants, Aaron Larry Jarrett ("Mr. Jarrett"), and Darleen F. Jarrett ("Mrs. Jarrett"), the above named-debtors ("Debtors"), objecting to their general discharges under 11 U.S.C. § 727(a)(3), (4)(A), and (5).[1]

---

1. At the trial, the plaintiff moved to withdraw the objection to the debtors' discharges under 11 U.S.C. § 727(a)(6), which was granted. Plaintiff also moved to amend the complaint to include an objection to the debtors' discharges under 11 U.S.C. § 727(a)(5). Plaintiff's oral motion was granted insomuch as it allowed the amendment of pleadings to con-

The court has subject matter jurisdiction under 28 U.S.C. §§ 1334(a)-(b) and 157(a). By virtue of 28 U.S.C. § 157(b)(2)(A) and (J), this is a core proceeding. The court conducted a trial of this adversary proceeding on September 23, 2009. At the conclusion of the trial, the court took the matter under advisement. The court has now carefully considered the testimony of the witnesses adduced at the trial, the trial exhibits, the written submissions of the parties, the case record as a whole, and the oral arguments of the parties' attorneys. The following shall constitute the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052.

## I. FACTUAL BACKGROUND

The relevant background facts may be briefly summarized as follows. On July 11, 2007, the debtors filed a joint voluntary § 302 petition under chapter 7 of the Bankruptcy Code. Debtors sought to discharge scheduled non-priority unsecured debts of $215,705.78. The representations set forth in the debtors' joint chapter 7 petition, the statement of financial affairs, and schedules were all made under penalty of perjury. Along with these required "papers," the debtors also filed with the clerk the required *Chapter 7 Statement of Current Monthly Income and Means Test Calculation* ("Form 22A") reporting current monthly income ("CMI") of $1,819.45 with annualized CMI of $21,833 and a household size of two. The reported CMI attributed to Mrs. Jarrett was $1,444.45 in gross wages and $375 in pension and retirement income. Mr. Jarrett reported no income on Form 22A. Because the debtors' annualized CMI fell below the median income of $43,487 in Tennessee, they were not required to complete the remaining parts of Form 22A.

Debtors' statement of financial affairs reflected CY 2005 employment income of $41,652.00; CY 2006 employment income of $11,167.00; and CY 2007 employment income of $8,000.00. Their statement of financial affairs also reflected a pension income of $9,000 received in the two years preceding the commencement of this joint chapter 7 case. Debtors' amended Schedule I reflected that Mr. Jarrett earned $500 per month from the operation of a business; and Mrs. Jarrett earned $1,494.06 for a combined monthly income of $1,994.06. Although initially not listed, the debtors also filed an amended Schedule B, reflecting that Mrs. Jarrett had an interest in stock options in Sysco Corporation ("Sysco"), her prior employer, with an estimated net value of $2,000. Several years prior to the commencement of their bankruptcy case, Mrs. Jarrett had worked for Sysco as a receptionist. As part of her employment at Sysco, Mrs. Jarrett received 4,000 stock option grants. In March 2004, Mrs. Jarrett exercised 1,200 options by market set order and received net proceeds of $14,950.11.

In June 2003, Mr. Jarrett and his brother, Terry Jarrett, formed Cornerstone Mortgage Group, LLC ("Cornerstone"), a mortgage brokerage company. Mr. Jarrett was a 50% member-manager of Cornerstone and also worked as a mortgage broker for the company. In January 2006, Cornerstone maintained a line-of-credit in the amount of $49,763 with a local bank. This line-of-credit increased to approximately $167,865 as of June 30, 2007. In 2006, Cornerstone began to experience a "slow down" in the mortgage brokerage business. As a direct result, Cornerstone increasingly utilized its line-of-credit and other cash advances to fund operations. As Mr. Jarrett explained at the trial, "[w]e

form to the evidence pursuant to Fed. R. Bankr.P. 7015(b).

were having to borrow money to keep the company open." During the first six calendar months of 2007, the debtors obtained $8,600 in cash advances from creditors and deposited those advances in their personal bank account. During the same time, Mr. Jarrett received approximately $13,396 from Cornerstone; $21,350 from his brother, Terry; and additional monies from family, friends, and other sources.

In May 2007, Mr. Jarrett's brother, Terry, unexpectedly passed away. With the untimely death of his brother coupled with the severe financial difficulties Cornerstone was experiencing, Mr. Jarrett could not keep the company in operation as an ongoing business concern. Cornerstone ceased conducting business in June 2007. Cornerstone had held a certificate of deposit in the amount of $25,000 from funds advanced by Terry Jarrett's mother-in-law. On June 30, 2007, one of Cornerstone's last operating actions was to cash out the certificate of deposit and remit the proceeds to Terry Jarrett's mother-in-law. Shortly thereafter, Mr. and Mrs. Jarrett filed this joint chapter 7 case.

## II. DISCUSSION

It is generally noted that the legal effect of a bankruptcy discharge is grounded upon the public policy of freeing the honest, but unfortunate, debtor from the financial burdens of prepetition debts. *See, e.g., Williams v. United States Fidelity & Guar. Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The bankruptcy discharge serves, in essence, to release an individual debtor's *in personam* dischargeable obligations and to permanently enjoin creditors from collecting discharged debts from the debtor. *See* 11 U.S.C. § 524(a).

Significantly, the denial of a debtor's discharge is a harsh outcome;

therefore, the provisions set forth in 11 U.S.C. § 727(a) are precisely drawn so as to encompass only those individual debtors who have not been honest and forthcoming about their financial affairs. *See, e.g., Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D.Ind.2006) ("The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."). Indeed, the denial of a general discharge can work a serious deprivation upon a debtor, and there are many circumstances where a debtor's acts and omissions may have been inadvertent or otherwise excusable. Thus, the provisions of § 727(a) are to be construed liberally in favor of granting debtors the fresh financial start contemplated by the Bankruptcy Code and the Supreme Court, and construed strictly against parties seeking to deny the granting of a debtor's discharge. *See, among others, Meyers v. Internal Revenue Service (In re Meyers)*, 196 F.3d 622, 624 (6th Cir.1999) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). As the party seeking the denial of the debtors' general discharges, the United States trustee, as plaintiff, bears the burden of proving that the debtors are not entitled to discharges under § 727(a). *See* Fed. R. Bankr.P. 4005. The standard of proof for allegations under § 727(a) is by a preponderance of the evidence. *See Grogan*, 498 U.S. at 286–87, 111 S.Ct. 654.

In this case, the plaintiff now advances three separate subsections of § 727(a) as asserted grounds for denying discharges to the debtors. First, the plaintiff submits that the debtors did not produce adequate records as required by § 727(a)(3). Second, the plaintiff submits that the debtors made false oaths in their statements and schedules in violation of § 727(a)(4). Finally, the plaintiff submits that the debtors

failed to explain satisfactorily the loss of assets or the deficiency of assets in violation of § 727(a)(5).

### A. Section 727(a)(3)

In objecting to the debtors' general discharges, the plaintiff first alleges that the debtors failed to keep or preserve financial records in violation of 11 U.S.C. § 727(a)(3). Under this subsection, the debtor will be denied a discharge where:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

 This subsection does not require absolute completeness in making or keeping records. *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir.1971). Rather, the debtors must "present sufficient written evidence" which will enable the trustee or creditors to reasonably ascertain the debtor's present financial condition and to track the debtor's financial dealings with substantial completeness and accuracy for a reasonable period past to present. *Id.* Plaintiff bears the initial burden of proving that the debtor's financial records are inadequate and that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP 1999) (citing *Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D.Mich.1997)). The adequacy of records is determined on a case-by-case basis, considering the totality of the particular facts and circumstances (e.g., "debt-

or's occupation, financial structure, education, experience, sophistication, and any other circumstances that should be considered in the interest of justice."). *Id.* If the records are determined to be inadequate, the burden shifts to the debtor to show the inadequacy is justified under all of the circumstances of the case. *Id.*

 There is no dispute in this case that the debtors' bookkeeping was not perfect. However, the record reflects that the debtors, upon request of the plaintiff, produced *hundreds* of pages of documents, including bank statements, credit card information, and tax records. This was not a so-called "cooperative as a last resort" case evidencing bad faith. Actually, the debtors' cooperation here was evidence of good faith. The court also finds that both debtors were highly credible witnesses and were persuasive in their sworn oral testimonies at the trial regarding their average level of financial sophistication and their belief that they had maintained their financial records to the best of their abilities. It is the court's finding that the debtors produced approximately 600 pages of financial records for review by the plaintiff and that these documents formed a sufficient picture of the debtors' financial condition. Accordingly, the court finds that the totality of the circumstances and applicable case law do not support a denial of discharge under § 727(a)(3), as the plaintiff has failed to carry the burden of proof by a preponderance of the evidence.

### B. Section 727(a)(4)(A)

 Plaintiff also objects to the debtors' discharges under 11 U.S.C. § 727(a)(4)(A), which bars discharge if a debtor knowingly and fraudulently made a false oath or account in connection with a bankruptcy case.[2] A knowingly and fraud-

**2.** 11 U.S.C. § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless—
\* \* \*

ulently made false oath or account bars discharge in bankruptcy, if it is both material and made with an intent to defraud. *See, e.g., In re Steiker,* 380 F.2d 765, 767 (3rd Cir.1967). To prevail, the plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) that the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir.2000). Whether a debtor has made a false oath or account under § 727(a)(4)(A) is a question of fact. *Id.*

 In all bankruptcy cases, the petitions, schedules, lists, statements, and any subsequent amendments thereto are signed under penalty of perjury. Fed. R. Bankr.P. 1008 and 1009; Official Forms B–1 (Petition), B–6 (Declaration), and B–7(Statement of Financial Affairs); *see also Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 725 (6th Cir. BAP 1999). The debtor's intent may be inferred from circumstantial evidence or from the debtor's course of conduct. *In re Hamo,* 233 B.R. at 724. Statements are material for the purposes of § 727(a)(4) if they "bear[ ] a relationship to the [debtor's] business transactions or estate, or concern[ ] the discovery of assets, business dealings, or the existence and disposition of property." *In re Keeney,* 227 F.3d at 686 (quoting *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992)). "Knowledge may be shown by demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *Hamo,* 233 B.R. at 725.

Plaintiff's primary objection here centers around asserted omissions and mis-

statements of the debtors which are contained in Form 22A and also in the debtors' statements and schedules. Plaintiff asserts that the debtors' failure to adequately disclose various payments received from Cornerstone, family members, and friends within the two years prior to the petition date was a material omission and misrepresentation of their income status on their statements, schedules, and Form 22A obligation. Plaintiff also submits that the debtors failed to list certain assets and other interests on their schedules.

 Based on the evidence adduced at trial and the court's observation of the debtors at the trial, the court finds that the plaintiff did not prove that the debtors knowingly and fraudulently made a false oath or account to warrant the denial of a general discharge. First, with respect to the debtors' omission of business income from the debtors' means test calculation reflected in Form 22A, it is noted that the debtors' amended Schedule I reflects an average monthly income of $1,994.06 with $500 per month from the regular operation of a business, presumably Cornerstone. This $500 amount is not reflected on Form 22A. However, assuming that Form 22A was amended to include the omitted sum of $500 per month, the amendment would not have resulted in the debtors' annualized current monthly income being more than the applicable median family income, thereby necessitating a calculation of allowed deductions under § 707(b)(2). While the court does not condone the omission of any assets, the originally omitted income here did not bring the debtors over the threshold of the means test and the presumption of abuse did not arise. Additionally, Mr. Jarrett testified that he

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

was "overwhelmed" when he and his wife, Mrs. Jarrett, filed for bankruptcy. Mr. Jarrett recalled that he and his brother took "draws" from Cornerstone. However, Cornerstone was not generating income and the funds drawn from Cornerstone consisted mostly of "borrowed money" not income. Therefore, it seems to the court that Mr. Jarrett may have innocently believed that he did not need to list the drawn funds received from Cornerstone as income on Form 22A. It also is significant that when the omission was brought to Mr. Jarrett's attention, he promptly provided information and subsequently amended his Schedule I to reflect the income. Accordingly, the omission of business income from debtors' means test calculation does not appear to have been made with an intent to deceive and is not sufficient to infer intent or otherwise justify a denial of their discharges.

■ As to the plaintiff's contention that the debtors misrepresented their income in their statements and schedules, there is no question that variations exist between the monies deposited in the debtors' personal bank account and the income reported in their petition and schedules. However, these variations, standing alone, do not demonstrate that the debtors, with knowledge as to their falsity, acted with the requisite intent to deceive. The court, having heard all of the evidence presented at trial, found both debtors to be highly credible witnesses. Debtors are of average sophistication as to their finances. Debtors also endured extreme emotional and economic upheaval with the untimely death of Terry, Mr. Jarrett's brother and business partner, and the failure of Cornerstone prior to filing bankruptcy. From Mr. Jarrett's testimony, the court gleans that Mr. Jarrett and his brother borrowed significant sums of money to keep their mortgage business afloat. Both brothers also took "draws" from the company account to pay various business and personal expenses. Mr. and Mrs. Jarrett also received monetary gifts and loans from family members and took out cash advances and credit card debt in order to pay bills. Debtors' finances were in a state of flux. As such, they were not fully aware of various funds received and disbursed prior to filing for bankruptcy, and they did not fully understand the obligation to report the funds as income on their schedules and statements when they filed for bankruptcy. While the evidence arguably reflects ignorance to an extent, and perhaps a degree of initial carelessness by the debtors, the court nonetheless finds that their omissions or misstatements do not rise to the level of fraudulent intent to warrant a general denial of their discharges nor should such intent be inferred.

■ With respect to the debtors' failure to list certain assets and interests on their schedules, the court also is sufficiently satisfied under a totality of the particular facts and circumstances with their explanations. Mrs. Jarrett testified, *inter alia*, that she retired from Sysco as a receptionist in 2004. At that time, she exercised her employee stock options in Sysco and received an amount of money. The remaining unexercised stock options did not vest for a number of years and she testified that she forgot about the remaining options. Mrs. Jarrett further testified that she did not receive an account statement listing these stock options, rather, one needed to go online to review the account. She additionally testified that when she and Mr. Jarrett filed for bankruptcy, she did not list the unexercised stock options as an asset because she was unaware of their existence. As soon as she became aware of the stock options, she promptly amended the bankruptcy Schedules C to reflect the net value of the

options as $2,000 and claimed an exemption in the options. However, after objection from the case trustee, Mrs. Jarrett withdrew the claim of exemption and the options were turned over to the estate. The chapter 7 trustee has not yet been able to sell Mrs. Jarrett's remaining Sysco stock options. The court finds Mrs. Jarrett's testimony credible under a totality of the particular facts and circumstances. As noted earlier, these are fact specific judicial calls to be made on a case-by-case basis. *See, for example, In re Donelson,* 410 B.R. 495 (Bankr.S.D.Tex.2009), (noting that the debtors did not make "false oaths" by omitting three bank accounts from their schedules).

Other deficiencies raised by the plaintiff do not reflect an intent of the debtors to defraud. For example, the debtors' omission with respect to ownership interest in the Fairoaks Property appears to be a mere oversight. Mr. Jarrett testified that in July 2006, his brother Terry had worked out a business arrangement with the property owners to make repairs on the property and sell it for a profit. As a result, the property was quit-claimed to Terry and Mr. Jarrett. However, one month later, Terry "couldn't do anything" with the property and so the property was quit-claimed back to the original owners. Similarly, Mr. Jarrett testified in order to conduct business in the State of Tennessee, Cornerstone had to hold a certificate of deposit in the amount of $25,000. In order to meet this requirement, Terry Jarrett borrowed the money from his mother-in-law. Therefore, after Cornerstone dissolved at the end of June 2007, the $25,000 was returned to Terry's mother-in-law. The court finds this testimony credible and

persuasive rationale regarding the debtors' the lack of intent to defraud; and this is not a case to infer intent.

### C. Section 727(a)(5)

Finally, plaintiff contends that § 727(a)(5) bars discharge because the debtors did not satisfactorily explain the loss or deficiency of assets.[3] Under § 727(a)(5), a court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). "The question of whether a debtor satisfactorily explains a loss of assets is a question of fact." *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984) (citing *Shapiro & Ornish v. Holliday,* 37 F.2d 407, 407 (5th Cir.1930)).

In order to obtain a denial of discharge under § 727(a)(5), the plaintiff must first establish by a preponderance of the evidence a loss or deficiency of prepetition assets that could have been used to pay creditors. *In re Reed,* 310 B.R. 363, 369 (Bankr.N.D.Ohio 2004). If such a showing is made, the debtor has an opportunity to explain the whereabouts of the assets. *Id.* At its root, a satisfactory explanation is "one that is reasonable under the circumstances." *Id. See also In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984) ("To be satisfactory, an explanation must convince the judge."). As long as the debtor's explanation is convincing and not rebutted, there is no need for documentary corroboration. *In re Cromer,* 214 B.R. 86, 97 (Bankr.E.D.N.Y.1997). When deciding whether a debtor's explanation is satisfactory, "the issue is whether the explanation satisfactorily describes what happened to

---

**3.** 11 U.S.C. § 727(a)(5) provides that:
 (a) The court shall grant the debtor a discharge, unless—
 (5) the debtor has failed to explain satisfactorily, before determination of denial of

discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

assets; not whether what happened to assets was proper." *In re Perry,* 252 B.R. 541, 550 (Bankr.M.D.Fla.2000); *see also In re Tauber,* 349 B.R. 540, 564 (Bankr. N.D.Ind.2006) (stating that, for purposes of § 727(a)(5), "the debtor does not need to justify the wisdom or prudence in the disposition of assets").

 Upon careful review of the record, the court, considering a totality of the particular facts and circumstances, finds that the denial of the debtors' discharges under § 727(a)(5) is not warranted. First, the court is not convinced that the unspecified deposits or funds at issue should be regarded as assets of the debtors. Moreover, even if the funds deposited in the debtors' account could be considered assets, the court nevertheless finds that the debtors satisfactorily explained that the funds in their possession were used to pay expenses. Both Mr. and Mrs. Jarrett testified that they received various loans from family and friends and were using credit cards and lines of credit to pay their personal living expenses and meet certain debt obligations of Cornerstone, which was failing due to a significant economic downturn. Mr. Jarrett also satisfactorily explained the disposition of assets of Cornerstone, such as the $25,000 certificate of deposit. In sum, the court finds the debtors' explanations as to the material aspects of their financial history and condition satisfactory and credible in light of all the testimony.

## III. CONCLUSIONS

The statutory words of the nation's bankruptcy laws cannot be read with the ease of a computer. *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). Moreover, in *In re Jones,* 490 F.2d 452, 457 (5th Cir.1974), the court stated:

> The Bankruptcy Act was intended to be a sturdy bridge over financially troubled waters by means of which "the honest but unfortunate debtor" may reach "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt,* 1934, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230. We refuse to make it a treacherous tightrope rope on which the slightest misstep spells disaster and over which only the most accomplished acrobat can successfully pass.

Under the existing circumstances, this is an appropriate case for the bankruptcy court to provide such a sturdy bridge.

For all the above reasons, the court finds that the plaintiff did not establish sufficient grounds to overcome the basic bankruptcy principle that honest but unfortunate individual chapter 7 debtors are entitled to a discharge and a fresh financial start. That is, the court finds that the plaintiff has failed to carry the requisite burden of proof by a preponderance of the evidence. As such, the court finds in favor of the defendant-debtors, Aaron Larry Jarrett and Darleen F. Jarrett, arising out of the complaint filed by the plaintiff, Richard F. Clippard, United States Trustee, Region 8.[4] Accordingly, the plaintiff's complaint is hereby denied.

---

**4.** The court commends and thanks the attorneys for the parties here for their outstanding advocacy/lawyering in this case.